LISA ANN FOX ET AL. *v.* FIRST BANK ET AL.
(12507)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued October 11—decision released December 10, 1985

*Daniel V. Presnick,* for the appellant (named plaintiff).

*Ronald J. Cohen,* with whom was *Stanley E. Parese,* for the appellees (defendants).

DANNEHY, J. The trial court, *Fracasse, J.*, dismissed the plaintiffs'[1] action against the defendants for failure to comply with orders of the court. The only question presented by this appeal which can be regarded as decisive is whether an appropriate sanction was imposed.

The controlling facts are conceded. On September 11, 1980, the plaintiff, Lisa Ann Fox, obtained a loan from the named defendant, First Bank (hereinafter the defendant), for the purchase of a 1980 Triumph TR7 convertible. When the plaintiff defaulted in the payment of sums due under the retail installment contract, the defendant, on September 2, 1981, repossessed the car without judicial intervention in accordance with General Statutes § 42-98.[2] On the same day that the

---

[1] While there were three named plaintiffs in the original action, only Lisa Ann Fox (hereinafter the plaintiff) has appealed the dismissal.

[2] General Statutes § 42-98 provides in part: "FORECLOSURE. (a) REPOSSESSION. When the retail buyer is in default in the payment of any sum due under the retail instalment contract or instalment loan contract, or in the performance of any other condition which such contract requires him to perform, or in the performance of any promise, the breach of which is by such contract expressly made a ground for the retaking of the goods, the holder of the contract may retake possession thereof. Unless the goods can be retaken without breach of the peace, it shall be retaken by legal process, but nothing herein contained shall be construed to authorize a violation of the criminal law. In the case of repossession of any motor vehicle without the knowledge of the retail buyer, the local police department shall be notified of such repossession immediately thereafter. In the absence of a local police department or if the local police department cannot be reached for notification, the state police shall be promptly notified of such repossession.

"(b) NOTICE OF INTENTION TO REPOSSESS. Not less than ten days prior to the retaking, the holder of such contract, if he so desires, may serve upon the retail buyer, personally or by registered or certified mail, a notice of intention to retake the goods on account of the buyer's default. The notice shall state the default and the period at the end of which such goods will be retaken, and shall briefly and clearly state what the retail buyer's rights under this subsection will be in case such goods are retaken. If the notice is so served and the buyer does not perform the conditions and provisions as to which he is in default before the day set for retaking, the holder of the contract may retake said goods and hold such subject to the provisions

car was repossessed, the plaintiff filed this action for wrongful repossession and the trial court, *Hadden, J.*, without a hearing, issued a temporary restraining order to prevent the sale or transfer of the car. On September 28, 1981, the defendant requested that the temporary restraining order be dissolved. The trial court, *Berdon, J.*, denied the request on January 13, 1982. When the defendant applied for reargument, the plaintiff asked for the return of the car pending the litigation. On April 8, 1982, the trial court modified the temporary restraining order. Under the terms of the modified order the defendant returned the car to the plaintiff upon condition that she make monthly payments to the defendant in the amount established by the underlying retail installment contract. Subsequently, a motion by the plaintiff that she be relieved from her obligation of monthly payments was denied.

---

of subsections (d), (e), (f), (g) and (h) of this section regarding resale, but without any right of redemption.

"(c) REDEMPTION. If the holder of such contract does not give the notice of intention to retake, described in subsection (b), he shall retain such goods for fifteen days after the retaking within the state in which they were located when retaken. During such period the retail buyer, upon payment or tender of the unaccelerated amount due under such contract at the time of retaking and interest, or upon performance or tender of performance of such other condition as may be named in such contract as precedent to the retail buyer's continued possession of such goods, or upon performance or tender or performance of any other promise for the breach of which such goods were retaken, and upon payment of the actual and reasonable expenses of any retaking and storing, may redeem such goods and become entitled to take possession of the same and to continue in the performance of such contract as if no default had occurred. The holder of such contract shall within three days of the retaking furnish or mail, by registered or certified mail, to the last known address of the buyer a written statement of the unaccelerated sum due under such contract and the actual and reasonable expense of any retaking and storing. For failure to furnish or mail such statement as required by this section, the holder of the contract shall forfeit the right to claim payment for the actual and reasonable expenses of retaking and storage, and also shall be liable for the actual damages suffered because of such failure. If such goods are perishable so that retention for fifteen days as herein prescribed would result in their destruction or substantial injury, the provisions of this subsection shall not apply and the holder of the contract may resell the goods immediately upon such retaking."

The plaintiff concedes that the temporary restraining order for monthly payments was valid, and that her failure to obey the order was punishable by contempt. It is also undisputed that on three separate occasions the plaintiff was found in contempt of court for failure to make the monthly payments as required by the temporary restraining order. At no time did she appeal from any of the contempt proceedings. The plaintiff does not claim that she was denied a hearing or the opportunity to appear and purge herself of the contempt. Nor does it appear from the record that the plaintiff sought to have the temporary restraining order vacated or modified due to changed circumstances.

The first finding of contempt was made after a hearing in response to the defendant's motion for contempt dated September 15, 1983. At that hearing the defendant introduced evidence, in the form of an affidavit of a First Bank employee, to establish the balance in arrears and the amount due from the plaintiff. The plaintiff was not present at the hearing. Her attorney did not introduce any evidence to show that the plaintiff was not in arrears nor any evidence of an inability on her part to comply with the April 8, 1982 order. The plaintiff's attorney stated, "I would ask simply, your Honor, that Ms. Fox be given thirty days to bring the account current." The court, *Fracasse, J.,* on September 26, 1983, cited the plaintiff for contempt of court.

Less than four months later, on January 12, 1984, the plaintiff was for the second time found guilty of contempt of the court's April 8, 1982 order. At the hearing on the defendant's motion for contempt dated November 17, 1983, the defendant introduced an affidavit of a First Bank employee to establish that while the plaintiff had paid the arrearage up to September, 1983, she had failed to make any subsequent payments. Again, the plaintiff was not present at the hearing. Her attorney stated, "[First Bank's] [c]ounsel indicated to

me that he hasn't received any payments, and I have no evidence to contradict that, your Honor." The plaintiff did not offer any evidence of her inability to make the payments ordered by the court. Her attorney stated, "I indicated to my client that she should be making payments, but I have been informed that her fiance is taking her to Puerto Rico for a brief vacation." The court, *Fracasse, J.,* for the second time, found the plaintiff in contempt of court.

On April 10, 1984, at the behest of the defendant, the plaintiff for the third time was found to be in contempt of the court's April 8, 1982 order. This third finding of contempt was made after a hearing at which the defendant introduced the affidavit of a First Bank employee to establish that while the plaintiff had substantially paid the arrearage accumulated as of January 12, 1984, she had failed to make payments for the months of February and March and was again in arrears. Once again the plaintiff did not appear for the hearing, and the trial court was given no explanation of her failure to comply with its earlier order. Her attorney could only concede that "[the plaintiff is] behind at this time in her payments." He stated, "[a]ll I can represent to the Court, your Honor, is I've spoken to Miss Fox, and she indicated that one of the problems that she has had is that her grandfather has recently passed away. I'm not exactly sure how that is going to relate to this particular matter and her position." In answer to these statements made during the hearing, the defendant pointed out to the court that it had invited Miss Fox to provide documentation of hardship more than a month earlier and that she had declined to do so.

At the conclusion of the April 9, 1984 contempt proceeding, the trial court ordered that the plaintiff pay to the defendant the arrearage through April, 1984, together with attorney's fees, by April 16, 1984, or, fail-

ing that, the action would be dismissed. By April 17, 1984, no payment had been made. On April 18, 1984, Judge Fracasse accordingly dismissed the action. The plaintiff appealed, claiming among other reasons of appeal, that the court erred in dismissing the case, and in invoking the "strongest possible sanction."

This court's role in reviewing an order of contempt is very limited. Adjudications of contempt are final and may be reviewed only on questions of jurisdiction such as whether the court had authority to impose the punishment inflicted or whether the act for which the penalty was imposed could constitute a contempt. *Friedlander* v. *Friedlander,* 191 Conn. 81, 84, 463 A.2d 587 (1983). The claims of error challenge neither the authority of the court nor the finding that the act of which the contempt consisted constituted a contempt. We must therefore presume that the trial court had authority and a sufficient basis for the imposition of sanctions. The sole issue before us is whether, under the circumstances of this case, the trial court abused its discretion in dismissing the action for failure to comply with orders of the court.

It is well settled that the imposition of sanctions to compel the observance of its orders rests within the discretion of the trial court and will not be disturbed on review unless there is an abuse of discretion. *Thode* v. *Thode,* 190 Conn. 694, 462 A.2d 4 (1983); *In re Mongillo,* 190 Conn. 686, 461 A.2d 1387 (1983). Generally, a sanction should not serve as a punishment or penalty. Courts should be reluctant to employ the sanction of dismissal except as a last resort. Such drastic action is not, however, an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority.

With these observations as a frame of reference we conclude that the trial court did not abuse its discretion in dismissing the action. Our review of the record

shows that the plaintiff did not comply with the April 8, 1982 court order to make monthly payments to the defendant, although she was duly notified of that order. On September 26, 1983, and again on January 12, 1984, the first two occasions on which the plaintiff was found in contempt, she complied with the court's order only to the extent of her arrearage as of the date of the contempt findings. The record is devoid of any reason why the plaintiff failed to make continuing payments as required. During this period the court expended a great deal of time entertaining the defendant's motions and trying to accommodate the plaintiff. On April 10, 1984, the trial court finally allowed the plaintiff six more days within which to purge herself. April 16 came and went without a response from the plaintiff. The record does not reveal any explanation by the plaintiff for her noncompliance. These facts demonstrate sufficient disregard for the court's order and deliberate disregard of the authority of the court to warrant the trial court's imposition of a sanction for noncompliance. Moreover, the plaintiff's course of action for almost two years justified the court's conclusion that such conduct would have persisted. We cannot conclude that the judgment of dismissal under the circumstances was an abuse of discretion.[3]

---

[3] The dissent implies what is certainly true that a trial court may not impose sanctions which are intended primarily as punishment and that dismissal, being such a drastic sanction, should be employed only as a last resort. The dissent does not recognize that the burden was on the plaintiff to establish by affidavit or otherwise that her persistent failure to comply with the order of the court was warranted by extenuating circumstances or events. The imposition of sanctions is addressed to the sound discretion of the trial court. While the trial court surely would have been justified in imposing a less severe sanction, we cannot say on the state of this record that the court abused its discretion in taking the action it did. The dissent equivocates when it characterizes as "conditional" Judge Berdon's order of April 8, 1982. An order of the court must be obeyed until it has been modified or successfully challenged, and the consequences for noncompliance may be severe indeed. We need not consider the propriety of "imprisonment for ordinary debts," which, as observed by the dissent, "was

There is no error.

In this opinion HEALEY, SANTANIELLO and CALLAHAN, Js., concurred.

SHEA, J., dissenting. I disagree with the majority on both procedural and substantive grounds.

The dismissal of the complaint by the trial court as a sanction for contempt is wholly unprecedented in this state and unauthorized by our rules of practice. A motion to dismiss a suit is proper only for failure to prosecute with reasonable diligence or where there is "(1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper service, (4) insufficiency of process, [or] (5) insufficiency of service of process." Practice Book §§ 251, 143. It is not contended that any of these grounds for a dismissal exist in this case. The court, therefore, erred in granting the dismissal sought by the defendant's motion as a sanction for the plaintiff's alleged contempt.

Practice Book § 351 provides that "[i]f a party fails to comply with an order of court . . . he may be nonsuited or defaulted by the court." The trial court did not invoke this more moderate sanction for the alleged disobedience of a court order by the plaintiff. The entry of a nonsuit would, of course, have allowed the plaintiff four months to open that judgment. Practice Book § 377. The possibility that the judgment might be opened was no justification for ordering a dismissal on grounds not authorized by §§ 143 or 251.

Although the plaintiff has not raised the issue, my reading of the record indicates a defective jurisdictional

abandoned long ago." If such were the case before us, our decision might well be advised by different considerations. But the plaintiff here asked for return of the car and accepted it subject to orders, perhaps in the form of "conditions," imposed by the court. As the architect of her own predicament, the plaintiff may not be heard to complain for any of the reasons expressed in the dissenting opinion.

basis for the finding of contempt. The finding of contempt by the trial court, *Fracasse, J.,* was based on the plaintiff's failure to make payments on a debt owed to the defendant pursuant to an order by the court, *Berdon, J.,* of April 8, 1982. This order directed that the defendant return the automobile it had previously repossessed to the plaintiff on the condition that she provide collision insurance and make payments of $132.28 monthly to the defendant.[1] The order of payments was simply a condition under which the plaintiff was permitted to retain possession of the car during the pendency of the litigation. Fairly construed, the order did not impose an unqualified obligation on the plaintiff to pay her debt to the defendant but only a conditional one to be fulfilled in order to continue her use of the car.

Indeed, the court had no authority to direct the plaintiff to make the payments to her creditor under the

---

[1] The order of April 8, 1982 by the court, *Berdon, J.,* was as follows:

"The plaintiff moves for a modification of the temporary order seeking a return of the automobile pending the litigation. The court for the reasons set forth in this and the original memorandum of January 13, 1982, is of the opinion that the same should be granted under the following condition which will fully protect both parties.

"Accordingly, the temporary restraining order is hereby amended as follows: Upon the defendant filing with this court a certificate from an insurance company licensed to do business in Connecticut, insuring the said automobile which is subject matter of this action with collision insurance for its full fair market value, with a cash deductible of no greater than $100.00 and the defendant First Bank listed as a loss payee to the extent of its interest in the automobile, and the payment of $132.28 to counsel for the defendant to be held in escrow (and a like payment each and every month thereafter until further order of the court), the defendant First Bank shall cause to be delivered to the plaintiff the said 1980 convertible, Triumph, TR7, vehicle identification number 7C7-11458UCF. So there is no further confusion, the order contemplates that the defendant First Bank make said vehicle available for delivery to the plaintiff upon the plaintiff fulfilling the above conditions free and clear of any liens and other charges resulting from the taking and storage of said vehicle by the defendant on September 2, 1981. Furthermore, the court finds, for good cause shown, that the plaintiff not be required to furnish bond with surety; the defendants' lien on the automobile and the insurance policy is adequate substitute."

sanction of contempt for failure to do so. The practice of imprisonment for ordinary debts was abandoned long ago and it defies credulity to assume that the court, *Berdon, J.*, in entering the order that is the basis for the finding of contempt intended that the plaintiff's noncompliance might result in her incarceration or other punishment for contempt. It would be most unusual for a court to make its contempt power available to a creditor in the collection of an ordinary debt. The terms of the order imposed only a conditional obligation in lieu of the security normally required for issuance of a temporary injunction. See General Statutes § 52-472. The failure of the plaintiff to fulfill the condition was, of course, a ground for terminating the temporary injunction and allowing the defendant to repossess the car. The plaintiff's default on the debt she owed the defendant did not under the order, as properly construed, subject her to punishment for contempt.

I would find error in the judgment of dismissal and remand for further proceedings.