CONNECTICUT NATIONAL BANK *v.* INVESTORS CAPITAL
CORPORATION ET AL.
(10973)

DALY, LANDAU and FREEDMAN, Js.

Argued June 4—decision released September 8, 1992

*Richard P. Weinstein,* for the appellants (defendants).

*Darrell K. Fennell,* pro hac vice, with whom were *Theodore R. Killian* and, on the brief, *Michael Winger,* for the appellee (plaintiff).

FREEDMAN, J. The defendants appeal from the judgment of the trial court rendered in favor of the plaintiff for $359,484.84. The defendants claim that the trial court abused its discretion (1) by entering a default against them for their failure to comply with a court order to disclose assets, and (2) by denying their motion to set aside the default. We affirm the judgment of the trial court.

The essential facts pertinent to this appeal are not substantially in dispute. During 1988 and 1989, the plaintiff made three separate $100,000 loans to the defendant Investors Capital Corporation (Investors). The payment of each loan was personally guaranteed, jointly and severally, by the other two defendants, Richard Breault and John Cellino. Each transaction was a "commercial transaction" as defined in General Statutes § 52-278a (a).[1] As such, the note underlying each loan contained a commercial waiver provision wherein the defendants waived their right to notice and to a hearing on the right of the plaintiff to a prejudgment remedy.

Investors was dissolved in late 1989, an act constituting a default under the terms of the underlying notes. On July 23, 1990, the plaintiff simultaneously filed a complaint for collection of the balance due on the notes and an application for a prejudgment remedy, together with all of the necessary supporting documents. The prejudgment remedy was granted by the trial court, ex parte, on August 1, 1990. The defendants, who had received notice of both the collection action and the prejudgment remedy as well as notice of their statu-

---

[1] General Statutes § 52-278a provides in pertinent part: "(a) 'Commercial transaction' means a transaction which is not a consumer transaction.

"(b) 'Consumer transaction' means a transaction in which a natural person obligates himself to pay for goods sold or leased, services rendered or moneys loaned for personal, family or household purposes."

▬▬▬▬▬▬▬▬▬▬

tory rights pursuant to General Statutes § 52-278e (b),[2] did not move to dissolve, vacate or modify the prejudgment remedy. On August 9, 1990, the plaintiff filed, pursuant to General Statutes § 52-278n (a),[3] a motion that sought an order requiring the defendants to disclose the existence, location and extent of their assets.

On March 25, 1991, the defendants filed an answer to the plaintiff's complaint and a counterclaim. In their answer, the defendants denied having made a knowing and intelligent waiver of their rights to notice and to a hearing on the plaintiff's prejudgment remedy application. They raised as a special defense that they did not knowingly and intelligently make the commercial waiver contained in the notes, and, in their counterclaim, sought damages for a violation of their constitutional rights by the issuance of the prejudgment remedy.

[2] When seeking a prejudgment remedy pursuant to General Statutes § 52-278f, as amended by Public Acts 1991, No. 91-315, § 2, the commercial waiver section, the plaintiff "shall include in the process served on the defendant a notice satisfying the requirements of subsection (b) of section 52-278e . . . ." General Statutes § 52-278e (b), as amended by Public Acts 1991, No. 91-315, § 1 (b), provides: "If a prejudgment remedy is granted pursuant to this section, the plaintiff shall include in the process served on the defendant the following notice prepared by the plaintiff: YOU HAVE RIGHTS SPECIFIED IN THE CONNECTICUT GENERAL STATUTES, INCLUDING CHAPTER 903a, WHICH YOU MAY WISH TO EXERCISE CONCERNING THIS PREJUDGMENT REMEDY. THESE RIGHTS INCLUDE: (1) THE RIGHT TO A HEARING TO OBJECT TO THE PREJUDGMENT REMEDY FOR LACK OF PROBABLE CAUSE TO SUSTAIN THE CLAIM; (2) THE RIGHT TO A HEARING TO REQUEST THAT THE PREJUDGMENT REMEDY BE MODIFIED, VACATED OR DISMISSED OR THAT A BOND BE SUBSTITUTED; AND (3) THE RIGHT TO A HEARING AS TO ANY PORTION OF THE PROPERTY ATTACHED WHICH YOU CLAIM IS EXEMPT FROM EXECUTION."

[3] General Statutes § 52-278n (a) provides: "The court may, on motion of a party, order an appearing defendant to disclose property in which he has an interest or debts owing to him sufficient to satisfy a prejudgment remedy. The existence, location and extent of the defendant's interest in such property or debts shall be subject to disclosure. The form and terms of disclosure shall be determined by the court."

On August 12, 1991, the trial court conducted a hearing on the plaintiff's motion to compel disclosure of the defendants' assets. The defendants did not appear at this hearing. The trial court granted the plaintiff's motion and ordered the defendants to comply by August 19, 1991. When the defendants failed to comply, the plaintiff, on August 23, 1991, filed another motion to compel disclosure of assets and requested that if the defendants failed to comply with the court's order within a specified period of time, the court should enter a default against the defendants on the plaintiff's complaint and on the defendants' special defense, and nonsuit the defendants on their counterclaim. On September 23, 1991, the trial court conducted a hearing on that motion. The defendants again failed to appear. The court granted the plaintiff's motion and ordered that the defendants be defaulted and nonsuited, but that the order would be vacated if they complied with the disclosure order by the end of the business day on September 26, 1991. The defendants did not comply.

On October 3, 1991, the defendants finally took action with respect to the prejudgment remedy and the orders compelling disclosure of assets. On that date, the defendants filed, for the first time, a motion to dissolve the prejudgment remedy and a "motion to reargue the order disclosing assets." Nothing was mentioned in the motion to reargue concerning the orders of default and nonsuit. On October 10, 1991, the defendants filed a motion for articulation in which they sought a clarification regarding the effective date of the September 23, 1991 order of default and nonsuit. All of the defendants' motions were heard by the trial court on October 21, 1991. The trial court made it clear that the default and nonsuit were effective as of September 23, 1991, subject to being vacated if the defendants complied by September 26, 1991, and denied the motion to dissolve and the motion to reargue.

On October 24, 1991, the defendants filed a motion to open the default and nonsuit that was entered by the trial court on September 23, 1991.[4] The defendants argued that the trial court had improperly ordered the disclosure of assets prior to a finding of probable cause on the plaintiff's prejudgment remedy and without providing the defendants with an opportunity to contest the validity of the commercial waiver, and then defaulted and nonsuited the defendants on the basis of their failure to comply with the disclosure order. On November 12, 1991, after a hearing at which the plaintiff and the defendants were present, the trial court denied the motion to set aside. On December 2, 1991, the defendants filed a notice of intent to appeal the trial court's denial of their motion to set aside the default.[5] After a hearing in damages, the trial court, on December 10, 1991, entered judgment in favor of the plaintiff against Investors Breault and Cellino for $359,484.84.

In this appeal, the defendants argue that the default entered against them for failing to disclose assets violated their constitutional due process rights because it was based on an ex parte finding of probable cause in a commercial waiver transaction in which the defendants had no meaningful opportunity to be heard. They argue that the trial court abused its discretion in entering the default and by denying their motion to set aside the default.

---

[4] Although the defendants entitled this motion as a motion to reopen, it is more properly characterized as a motion to set aside the default and nonsuit. Practice Book § 376 provides the method for setting aside defaults where judgment has not been rendered. The proper motion is a motion to set aside the default. For purposes of this appeal, therefore, we will treat the defendants' motion to open the default as a motion to set aside pursuant to Practice Book § 376.

[5] The defendants' notice of their intent to appeal, as well as their preliminary statement of issues and their appellate brief, raise and present only the issue of the alleged invalidity of the default, not the nonsuit. We therefore consider any challenge to the entry of the nonsuit abandoned.

As a preliminary matter, we note that on October 3, 1991, the defendants filed a motion to dissolve the prejudgment remedy, a motion the statutory authority for which is derived from General Statutes § 52-278e. General Statutes § 52-278*l* provides that appeals from an order denying a motion to dissolve under § 52-278e must be taken within seven days of the rendering of the order.[6] Because the defendants failed to appeal the denial of their motion to dissolve within seven days, we are precluded from addressing the merits of the trial court's action. We concern ourselves with only the entry of the default and the refusal of the trial court to set it aside.

Practice Book § 230A and General Statutes § 52-278n permit the trial court to compel a defendant "to disclose property in which he has an interest or debts owing to him sufficient to satisfy a prejudgment remedy." Practice Book § 231 provides the means by which the trial court may enforce its disclosure orders. Specifically, it provides: "If any party has . . . failed to comply with a discovery order made pursuant to Sec. 230A . . . the court may, on motion, make such order as the ends of justice require. Such orders may include the following: (a) The entry of a nonsuit or default against the party failing to comply . . . ."

The entry of sanctions pursuant to Practice Book § 231 rests within the sound discretion of the trial court. *Rullo* v. *General Motors Corporation,* 208 Conn. 74, 78, 543 A.2d 279 (1988); *Zaleski* v. *Zaleski,* 21 Conn. App. 185, 189, 572 A.2d 76 (1990). "In reviewing a

[6] General Statutes § 52-278*l* provides in pertinent part: "(a) An order (1) granting or denying a prejudgment remedy following a hearing under section 52-278d or (2) granting or denying a motion to dissolve or modify a prejudgment remedy under section 52-278e or (3) granting or denying a motion to preserve an existing prejudgment remedy under section 52-278g shall be deemed a final judgment for purposes of appeal.

"(b) No such appeal shall be taken except within seven days of the rendering of the order from which the appeal is to be taken. . . ."

claim that this discretion has been abused the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [T]he ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Rullo* v. *General Motors Corporation*, supra, 78–79. With respect to the plaintiff's uncontested motions, the trial court twice ordered the defendants to disclose assets sufficient to satisfy the plaintiff's prejudgment remedy, which itself had never been challenged by the defendants at the time of the orders compelling disclosure. The defendants failed to comply with both disclosure orders. The trial court, therefore, did not abuse its discretion in entering a default against the defendants.

The defendants argue, however, that the trial court had no authority to compel disclosure because the trial court never made a finding of probable cause, a necessary prerequisite to an order compelling disclosure under General Statutes § 52-278n and Practice Book § 230A,[7] and because they were denied an opportunity to be heard on the validity of the commercial waiver. The defendants' argument is misplaced. First, the record clearly indicates that on August 1, 1990, the trial court, *Fracasse, J.*, entered an order granting the plaintiff's application for a prejudgment remedy. That order specifically provided: "[I]t is found that there is probable cause to sustain the validity of the plaintiff's claim and the application for garnishment and attachment should be granted ex parte because of the commercial waivers of prejudgment remedies referred to above."

---

[7] General Statutes § 52-278n (c) provides: "The court may order disclosure at any time prior to final judgment after it has determined that the party filing the motion for disclosure has, pursuant to section 52-278d, 52-278e or 52-278i, probable cause sufficient for the issuance of a prejudgment remedy." Practice Book § 230A (c) provides virtually identical language.

Second, the defendants attempt to mount a much belated constitutional challenge to the issuance of the underlying prejudgment remedy. Contrary to their claim, they were not denied an opportunity to challenge the validity of the commercial waiver or the issuance of the prejudgment remedy. Rather, they chose not to challenge it at the time, and further chose not to obey two court orders compelling disclosure. "An order of the court must be obeyed until it has been modified or successfully challenged. See *Fox* v. *First Bank,* 198 Conn. 34, 40 n.3, 501 A.2d 747 (1985)." *Jaconski* v. *AMF, Inc.,* 208 Conn. 230, 234–35, 543 A.2d 728 (1988). "A party is presumed to be aware of the rules of practice and thus to know that disobedience of a court order may result in a default or nonsuit under [Practice Book § 231]." Id., 235. We will not permit a party to stand idly by while the trial court twice has compelled it to submit to a proper discovery request, and then on appeal challenge the legal authority for the order compelling discovery in the first place. A challenge to the trial court's order compelling disclosure should properly have been made to the trial court before the default had entered. Because the defendants chose not to present such a challenge until such a late date, we will not consider it for the first time in this appeal.

The defendants also claim that the trial court abused its discretion by denying their motion to set aside the default. "A motion to set aside a default where no judgment has been rendered may be granted by the court for good cause shown upon such terms as it may impose. As part of its order the court may extend the time for filing pleadings or disclosure in favor of a party who has not been negligent. . . ." Practice Book § 376.

The determination of whether to set aside a default is within the discretion of the trial court. *Weldon Business Group* v. *Schweitzer,* 22 Conn. App. 552, 555, 577

A.2d 1126 (1990); *Voluntown* v. *Rytman,* 21 Conn. App. 275, 283, 573 A.2d 336, cert. denied, 215 Conn. 818, 576 A.2d 548 (1990). "The action of the trial court is not to be disturbed unless it has abused its broad discretion, and in determining whether there has been such abuse every reasonable presumption should be made in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Weldon Business Group* v. *Schweitzer,* supra, 554.

The trial court reasonably concluded that the default should not have been set aside. The trial court ordered the defendants to disclose assets on two occasions, and both times the defendants failed to comply with the orders. The defendants failed to appear at the hearing on both orders. They also failed to present any valid reason for their failure to comply with the court's orders. The basis of the defendants' motion to open went to the merits of the prejudgment remedy itself, which the trial court had granted more than a year prior to the entry of the default, and which had not been challenged by the defendants until after the default had been entered. Such a challenge should have been raised at a much earlier stage in the proceedings, and had nothing to do with the defendants' failure to comply with disclosure orders.

The judgment is affirmed.

In this opinion DALY, J., concurred.

LANDAU, J., concurring. Although I agree with the result the majority reaches, I file a concurrence to point out my belief that there is no procedure that allows a motion to reargue.

In its rendition of the facts, the majority states correctly that on October 3, 1991, "the defendants filed . . . a 'motion to reargue the order disclosing assets.' Nothing was mentioned in the motion to reargue concerning the orders of default and nonsuit. . . . The trial court . . . denied the . . . motion to reargue." I believe our continuing recognition of a "motion" that "no statute or trial court rule of practice specifically authorizes"; *K. A. Thompson Electric Co.* v. *Thompson,* 24 Conn. App. 758, 759, 591 A.2d 822 (1991); does a disservice to the bench, bar and litigants.[1]

Although cognizant of the language of *Thompson,* citing *Springfield-Dewitt Gardens, Inc.* v. *Wood,* 143 Conn. 708, 709 n.1, 125 A.2d 488 (1956); in which this court recognized our inherent authority to determine whether such a motion should be considered, and, if so, whether to act on the motion, I note that the footnote in *Springfield-Dewitt,* on which the *Thompson,* court relied, does not even rise to the level of obiter dictum as a collateral opinion. The footnote was inserted in a section immediately preceding the majority opinion to explain a ruling in a prior proceeding and was penned by the Chief Justice, who dissented from the majority opinion on the substantive appeal. Moreover, the procedure in *Springfield-Dewitt* and in *DeLucia* v. *Home Owner's Loan Corporation,* 130 Conn. 467, 470, 35 A.2d 868 (1944), on which the *Springfield-Dewitt* court relied, involved a "motion to rehear," rather than a "motion to reargue."

Our continued recognition, albeit implied, of a procedure that does not exist by virtue of any rule or statute and, thus, has no checks or limitations, and that

---

[1] "The bench and bar are entitled to expect uniform application of the rules of practice. The practice of law and the performance of a trial judge's duties both are sufficiently difficult without the additional burden of uncertainty as to which rules will be strictly enforced and which rules will be liberally interpreted . . . ." *Birmingham* v. *Kielczewski,* 17 Conn. App. 219, 225, 551 A.2d 1260 (1988) (*O'Connell, J.,* dissenting).

continues to clog our short calendar dockets and consume the valuable time of our trial bench, makes little sense to me. As Judge Dannehy so aptly noted, "[e]ither we adhere to the rules or we do not adhere to them." *Osborne* v. *Osborne,* 2 Conn. App. 635, 639, 482 A.2d 77 (1984).

Accordingly, I concur in the result.