[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR CONTEMPT(DOCKET ENTRY NO. 161.50) DEFENDANT'S RULE TO SHOW CAUSE(DOCKET ENTRY NO. 126)AND PLAINTIFF'S RULE TO SHOW CAUSE(DOCKET ENTRY NO. 160)
The parties to this action were divorced on November 29, 1984. Presently before this court is the plaintiff's motion for contempt seeking an arrearage of support and a rule to show cause. The defendant filed an objection to the motion for contempt and, post hearing, both parties filed memoranda in support of their respective positions. The defendant's memorandum was received by the court on December 19, 1996 and the plaintiff's memorandum on December 14, 1996.
The following facts are relevant by way of background. The court, Honorable Herbert S. MacDonald, State Trial Referee (STR), by memorandum of decision dated November 29, 1984, entered orders dissolving the marriage of Vicki Ford (plaintiff) and Thomas Ford (defendant) and made the following order regarding alimony and child support: "The defendant shall pay the plaintiff the sum of $300. per week (15,600 per year) as unallocated alimony and child support until October 1, 1985, at which time such payments shall be reduced to $250. per week ($13,000. per year) until August 1, 1990, at which time such payments will be further reduced to $200 per week ($10,200 per year) to terminate upon the plaintiff's CT Page 4542 remarriage or cohabitation within the meaning of the statute, or upon the death of either party, all such payments to be made in cash and to be otherwise subject to modification by the court under Connecticut law, caused by changed conditions." (Memorandum of decision p. 6 ¶ 4(c).)
In 1987, the defendant unilaterally stopped paying alimony because it was his belief that his former wife was cohabitating within the meaning of the statute. Mr. Ford sought the assistance of counsel who advised the defendant to stop making payments despite the absence of a court issued order modifying the November 29, 1984 judgment. Both parties, however, eventually filed motions seeking to modify the defendant's support obligations. On September 2, 1987, the defendant filed a "Rule to Show Cause" compelling the plaintiff to appear before the court and show cause why the orders of alimony should not be terminated. The rule to show cause alleged that the plaintiff was cohabitating and living within a "pseudo-marital relationship. " On September 20, 1987, the plaintiff filed a motion to modify support seeking an upward modification. The motion to modify alleged a substantial change in circumstances.
The parties agreed to mark all motions "off" and not proceed to a hearing. As a result, on September 22, 1987, Judge DeMayo entered the following order: "Case marked off. Orders retroactive by agreement." Following Judge DeMayo's order, no motions were filed with the court until January 19, 1996, when the plaintiff filed an "Application for Rule to Show Cause." This "Application" was again filed on February 22, 1996. By way of summary, the motions pending before this court and subject to the December 17, 1996 hearing include (1) plaintiff's motion for contempt; (2) defendant's rule to show cause; and (3) plaintiff's rule to show cause.
As stated, the court heard testimony on October 17 and again on October 21, 1596 from both parties, their two children, Attorney Chiarelli, Mr. Ford's former counsel, and Mr. Jerry Capurso.[1] The court will address the testimony as it relates to the arguments raised by the parties. Counsel for Mr. Ford set forth four issues which this court will address as follows: (1) Whether the courts of this state recognize the validity of equitable defenses in alimony and support arrearage cases; (2) whether Judge DeMayo's order of September 22, 1987, making all orders concerning modification of support retroactive to that date, is still a valid and enforceable order; (3) whether CT Page 4543 direction of counsel in violation of a court order relieves a party of the duty to obey said court order; and (4) whether a hearing pursuant to a Rule to Show Cause can speak of conduct occurring beyond the original date of the hearing.
I. Whether the courts of this state recognize the validity of equitable defenses in alimony and support arrearage cases.
The defendant has raised the defenses of equitable estoppel, laches and waiver. These defenses are recognized as valid defenses in alimony and support arrearage cases. See Bozzi v.Bozzi, 177 Conn. 232, 413 A.2d 834 (1975); Emerick v. Emerick,28 Conn. App. 794, 613 A.2d 1351, cert. denied, 224 Conn. 915,617 A.2d 171 (1992); Coscina v. Coscina, 24 Conn. App. 190,587 A.2d 159 (1991); and Lounds v. Lounds, 41 Conn. Sup. 100, 551, A.2d 775 (1988). The burden of proof by a preponderance of the evidence as to estoppel, laches and waiver is on the pleader.Connecticut National Bank v. Voog, 233 Conn. 352, 366,658 A.2d 172 (1995); Coscina v. Coscina, supra, 24 Conn. App. 194. Where such essential proof has not been produced, the court cannot provide protection by virtue of such equitable doctrines.
A. Equitable estoppel
"Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. Bozzi v. Bozzi, 177 Conn. 232, 242, 413 A.2d 834 (1979);Dupuis v. Submarine Base Credit Union, Inc., [170 Conn. 344, 353,365 A.2d 1093 (1976)]; Pet Car Products, Inc. v. Barnett,150 Conn. 42, 53-54, 184 A.2d 797 (1962); Zoning Commission v.Lescynski, [188 Conn. 724, 731, 453 A.2d 1144 (1982)].Kimberly-Clark Corporation v. Dubno, 204 Conn. 137, 148, 527 A.2d 679
(1987). O'Sullivan v. Bergenty, 214 Conn. 641, 648, 573 A.2d 729
(1990). It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge. Spear-Newman, Inc. v. Modern Floors Corp.,149 Conn. 88, 91-92, 175 A.2d 565 (1961)." (Internal quotation marks omitted.) Connecticut National Bank v. Voog, supra,233 Conn. 366-67. CT Page 4544
In Bozzi v. Bozzi, 177 Conn. 232, 413 A.2d 834 (1979), the Supreme Court upheld the trial court's denial of the defenses of laches and equitable estoppel. In terms of the estoppel claim inBozzi, supra, the trial court found that the defendant did not change his position in reliance upon his former wife's nonenforcement of the order of support, or that he was induced by any representation made by her. The trial court found that Mr. Bozzi only stopped payments because he believed that the wife's removal of the children to Holland, without his permission, was illegal. The court found it was not.
In the present case, the defendant, in support of his estoppel defense, relies on the case of Raymond v. Raymond,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 154054 (February 10, 1992, Karazin, J.,6 Conn. L. Rptr. 15). This reliance is misplaced as the Raymond case is factually distinguishable. In Raymond, supra, the court heard testimony from the plaintiff husband who stated that "he and his ex-wife had a conversation . . . in which the wife agreed that she would waive any and all claims she may have to future claims for alimony as long as the plaintiff husband cared for the children and provided for their education to the best of his ability." Raymond v. Raymond, supra, 6 Conn. L. Rptr. 16. The court found Mr. Raymond's testimony to be consistent with his failure to pursue a motion to modify support that was filed with the court several years before the ex-wife's motion for contempt. Ms. Raymond's motion for contempt was filed approximately 9 years after the oral agreement. The court found for the plaintiff on the defenses of laches, equitable estoppel and waiver because the court credited the testimony of Mr. Raymond regarding the oral agreement.
In the case at bar, there was no credible evidence of an oral agreement that would lead to a conclusion that the contempt motion should be denied based on equitable principles. The court finds that Mr. Ford did not change his position by not paying alimony upon what could be called a bilateral agreement. Additionally, it would appear that Mr. Ford intended to discontinue making support payments regardless of whether Ms. Ford abandoned her claim to such payments. Therefore, the defendant cannot prevail on his estoppel claim.
Furthermore, no testimony nor evidence was presented suggesting that the parties agreed, either orally or in writing, CT Page 4545 to allow the unallocated alimony and child support agreement to cease. Ms. Ford did not make any representations to Mr. Ford regarding whether he should stop paying support. Ms. Ford never did or said anything that would lead Mr. Ford to conclude she was cohabitating. Mr. Ford based his decision to stop paying support on seeing a stranger's car parked in front of his former spouse's house. That alone does not establish cohabitation. In order to find that the plaintiff was living with Mr. Capurso, the defendant would be required "to prove that (1) the [plaintiff] was living with [Capurso] and, (2) the living arrangement with [Capurso] caused a change of circumstances so as to alter the financial needs of the defendant." D'Ascanio v. D'Ascanio,237 Conn. 481, 486, 678 A.2d 469 (1996).
The court finds that the testimony of the parties children regarding whether Ms. Ford was cohabitating with Mr. Capurso lacks credibility. The parties daughter, Jill, now age twenty-five, testified on direct examination that she lived with Ms. Ford in 1985, 1986 and 1987. On cross-examination this testimony was recanted. Additionally, the tax returns of Mr. Ford for 1985, 1986 and 1987 refute the daughter's testimony. Under the exemptions category on these tax returns Mr. Ford claimed Jill as a dependent. The questions, and responses read as follows:
Question 6(c): "First names of your dependent child who lived with you" Answer: "Jill." The corresponding box for the number of exemptions is filled in with the number one (1).
There is another question on these returns, 6(d) which states: "First names of your dependent children who did not live with you (see page 6)." The space provided for an answer to this question is blank as is the corresponding box for the number of exemptions.
The parties son, Thomas, also testified and stated that Mr. Capurso lived with his mother from 1986 to 1989 when Thomas was approximately 15 years of age. Thomas stated that Mr. Capurso was at the house 90 to 95% of the time during the three year period in question. On cross examination, Thomas testified that he now lives with his father and is a co-principal of a business with his father. The court did not find the testimony of this witness to be credible. He seemed unsure of his responses and the court believes he tailored his testimony in favor of his father with whom he was then living and in business. CT Page 4546
Mr. Capurso also testified and stated that he met Ms. Ford in 1985 but that he never moved out of his residence in Bristol. He also admitted that the stayed overnight at Ms. Ford's home almost every weekend and moved into Ms. Ford's home in 1987 for not more than a maximum of two months in order to assist Ms. Ford during her convalescence from lung cancer surgery and treatment. The testimony of Ms. Ford and Mr. Capurso impressed the court as forthright and credible. Their demeanor and forthright responses lead this court to credit their testimony on the issue of cohabitation. Therefore, the court finds, based on all the testimony, that Ms. Ford was not cohabitating with Mr. Capurso within the meaning of the statute. Accordingly, the defendant's Rule to Show Cause dated September 2, 1987 and filed September 3, 1987 is denied.
Mr. Ford claims that he would never have purchased a home if he knew that he would be required to continue paying alimony. From the testimony, the court finds that Mr. Ford's reliance on Ms. Ford's conduct did not cause him to change his position to his detriment. Mr. Ford purchased the home in 1987 or 1988 for the sum of $150,000 without the benefit of mortgage financing. Mr. Ford's tax return for 1987, which was admitted without objection, shows that he sold other property for $220,000. He indicated that he was going to use the proceeds from the sale of this other piece of property to purchase his current home, but that the buyer of this other property, a three family house, went bankrupt, and consequently the deal fell through. The court notes that Mr. Ford did not file an amended tax return or at least failed to produce an amended return at the hearing. Mr. Ford admitted that there was no mortgage on the property at the time of purchase but now there is a mortgage. The court fails to see how Mr. Ford acted to his detriment under the testimony presented. The decision to buy a home and stop making support payments was made by Mr. Ford of his own volition. By failing to take action to modify his obligation, Mr. Ford subjected himself to the risk that he would eventually be ordered to pay an arrearage. This is something the defendant was aware of in light of Judge DeMayo's order providing "[o]rders retroactive by agreement." The court finds that the defendant has failed to establish the two elements, inducement and reliance, necessary to a successful claim of equitable estoppel.
B. Laches
"Laches consists of an inexcusable delay which prejudices the CT Page 4547 defendant . . . [and consists of two elements]. First, there must have been a delay that was inexcusable, and second, that delay must have prejudiced the defendant . . . . Absent prejudice to the defendant, the mere lapse of time does not constitute laches." (Citations omitted; internal quotation marks omitted.)Federal Deposit Ins. Co. v. Voll, 38 Conn. App. 198, 210,660 A.2d 318, cert. denied, 235 Conn. 903, 665 A.2d 901 (1995). "Such prejudice results if the defendants are led to change their position with respect to the matter in question." Nauss v.Pinkes, 2 Conn. App. 400, 411, 480 A.2d 568, cert. denied,194 Conn. 808, 438 A.2d 612 (1984).
When alleging the defense of laches, "`[t]he burden of proof is on the party alleging laches to establish that defense.'"Coscina v. Coscina, 24 Conn. App. 190, 194, 587 A.2d 159 (1991). As stated above, "[t]he mere lapse of time does not constitute laches unless it results in prejudice to the defendant as where, for example, the defendant is led to change his position with respect to the matter in question." (Citations omitted.) Emerickv. Emerick, 28 Conn. App. 794, 804, 613 A.2d 1351, cert. denied,224 Conn. 915, 617 A.2d 171 (1992). "In order to establish this defense, the defendant must prove that the plaintiff unreasonably and inexcusably delayed bringing suit, and that the defendant suffered prejudice as a result of the delay." Coscina v. Coscina,
supra, 24 Conn. App. 194. "Laches in legal significance . . . works a disadvantage to another." Berin v. Olson, 183 Conn. 337,344, 439 A.2d 357 (1981).
The fact that the defendant unilaterally made a decision to stop sending support payments to the plaintiff is not in dispute. Mr. Ford argues that he was relieved of his legal obligation to pay alimony under the 1984 dissolution judgment because he believed the plaintiff was cohabitating within the meaning of the statute. Mr. Ford sought the advice of his attorney and was told to stop making the payments. Unfortunately for Mr. Ford, this advice was not sound. "It is axiomatic that a person may not pick and choose which court orders he will obey . . . . A party's opinion concerning the necessity for a particular order does not excuse his disobedience." Meehan v. Meehan, 40 Conn. App. 107,110, 669 A.2d 616, cert. denied, 236 Conn. 915, 673 A.2d 1142
(1996). The court finds that by agreeing to a retroactive order, the defendant knew he could be facing an order to pay an arrearage. Mr. Ford's testimony concerning the fact that he would not have purchased a home if he knew that he would be required to pay support and back support, even if true, does not constitute CT Page 4548 detrimental reliance as the purchase was voluntarily made in the face of an existing court order and any prejudice resulting was therefore self-induced without justification and was simply not credible.
Furthermore, "[a]n order of the court must be obeyed until it has been modified or successfully challenged. See Fox v. FirstBank, 198 Conn. 34, 40 n. 3, 501 A.2d 747 (1985). Jaconski v. AMF,Inc., 208 Conn. 230, 234-35, 543 A.2d 728 (1988)." ConnecticutNational Bank. v. Investors Capital Corporation,29 Conn. App. 48, 56, 613 A.2d 1370, cert. denied,224 Conn. 902, 615 A.2d 1044 (1992). In this case, the defendant filed a motion to modify in September 1987, but that motion was not heard until it came before this court on October 21, 1996.[2]
As stated above, the motion was marked off by agreement of the parties in 1987 due to the ill health of the plaintiff who underwent a lobectomy, radiation and chemotherapy post diagnosis of lung cancer. Judge DeMayo entered an order continuing the Rule to Show Cause filed by the defendant in September of 1987. The order specifically stated: "Case marked off. Orders retroactive by agreement." The plaintiff testified that not only was she diagnosed with lung cancer in 1987 but she also had a series of illnesses and surgeries between 1989 and 1994 including at least two back surgeries. It would appear from the file that the parties were engaged in discovery duels but aside from motions for discovery, deposition notices and motions to compel, there was little file activity. In fact, the file contains only a single attempt by Mr. Ford's former counsel to reclaim the application for rule to show cause. The reclaim slip was filed with the court on September 21, 1988.
The defendant has failed to prove "that the plaintiff unreasonably and inexcusably delayed bringing suit, and that the defendant suffered prejudice as a result of the delay." Coscinav. Coscina, supra, 24 Conn. App. 194.
In the absence of proof of prejudice to the defendant, which is an essential element of laches, the court finds that the special defense has not been substantiated. See Berin v. Olson,
supra, 183 Conn. 344-45. (The defendant has failed "to show that the plaintiff took any action which was inexcusable or prejudicial to the defendant so as to justify a conclusion of laches.") CT Page 4549
As Judge DeMayo so aptly stated: "Insofar as his defenses of laches and estoppel are concerned, the defendant also lacks an essential element. Both counsel have cited cases which state correctly that the law of laches and estoppel requires that the defendant show he has acted to his detriment in reliance on the acts or words of the plaintiff. The defendant relies on his having agreed to buy a house and co-sign a mortgage to secure the purchase as an action to his detriment. The court can find no case in which such an act was considered as `detrimental' or a `change of position for the worse.'"[3] Kovach v. Kovach,
Superior Court, judicial district of New Haven, Docket No. 128502 (August 6, 1991, DeMayo, J.).
C. Waiver
"`Waiver is the intentional relinquishment of a known right.'" (Citation omitted.) Novella v. Hartford Accident andIndemnity Co., 163 Conn. 552, 561, 316 A.2d 394 (1972). Waiver requires both, that there be knowledge of the right and the intention to relinquish it. Id., 562. "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied." (Internal quotation marks omitted; citations omitted.) Loda v. H. K. Sargeant Associates, Inc., 188 Conn. 69,76, 448 A.2d 812 (1982). "In other words, waiver may be inferred from the circumstances if it is reasonable so to do [sic]." Id. In the present case, no evidence of waiver was presented beyond the fact that Ms. Ford did not actively pursue her motion for contempt originally filed on October 1, 1987 (Motion # 128). Ms. Ford's failure to actively pursue her contempt motion does not give rise to an intentional relinquishment of a known right. The testimony presented indicated that Ms. Ford suffered a series of setbacks in her health including a diagnosis of lung cancer in 1987 and at least two back surgeries, one in 1991 and a second in 1992. The court finds that Mr. Ford failed to sustain his burden of proving waiver.
Along with Raymond v. Raymond, supra, another case cited by Mr. Ford, MacLeod v. MacLeod, Superior Court, judicial district of New Haven, Docket No. 104613 (January 2, 1992, Bassick, J.,5 Conn. L. Rptr. 364), is likewise factually distinguishable. InMacLeod, supra, the payee spouse wrote a letter to the payor spouse specifically agreeing to release Mr. MacLeod from any further alimony payments. This letter was written and sent to Mr. MacLeod in February of 1967. MacLeod v. MacLeod, supra, 5 Conn. CT Page 4550 L. Rptr. 364. Twenty-four years later, the former Ms. MacLeod filed a motion for contempt. Id. The court found that the payee spouse had clearly waived her rights to support payments by virtue of the letter and the twenty-four year lapse of time. Id., 365. Such an agreement of the payee spouse is absent in the instant case.
There is no evidence that would lead this court to deny the plaintiff's motion for contempt on equitable principles. From the testimony, it appears that Ms. Ford was very ill. It does not appear that Ms. Ford intentionally relinquished a known right(Lounds v. Lounds, 41 Conn. Sup. 100, 107, 551 A.2d 775 (1988) or that Mr. Ford changed his position by not paying support in reliance upon what could be called an agreement. Additionally, it would appear that Mr. Ford intended to discontinue making the unallocated support payments regardless of whether Ms. Ford abandoned her claim to such payments. For the reasons discussed above in parts A and B of this opinion and the facts set forth above, the defense of waiver also fails.
II. Whether Judge DeMayo's order of September 22, 1987, making all orders concerning modification of support retroactive to that date, is still a valid and enforceable order.
"An order of the court must be obeyed until it has been modified or successfully challenged. See Fox v. First Bank,198 Conn. 34, 40 n. 3, 501 A.2d 747 (1985). Jaconski v. AMF, Inc.,208 Conn. 230, 234-35, 543 A.2d 728 (1988)." Connecticut NationalBank. v. Investors Capital Corporation, 29 Conn. App. 48, 56,613 A.2d 1370, cert. denied, 224 Conn. 902, 615 A.2d 1044 (1992). The defendant did not seek modification of Judge DeMayo's order nor did he challenge it. Therefore the order of Judge DeMayo with respect to the retroactivity of the orders before the court is valid and enforceable.
III. Whether direction of counsel in violation of a court order relieves a party of the duty to obey said court order.
The court can find no authority, nor does the court feel that, any attorney is justified in advising a client to violate a court order.
IV. Whether a hearing pursuant to a Rule to Show Cause can speak of conduct occurring beyond the original date of the hearing. CT Page 4551
This case was scheduled for a hearing and marked off in the fall of 1987. By order dated September 22, 1987, Judge DeMayo entered the following order: "Case marked off. Orders retroactive by agreement." The parties have raised the issue of whether the court could hear evidence regarding the conduct of the parties beyond the 1987 date. The court considers this issue moot as it heard all the evidence presented even that involving conduct occurring beyond the original date of the hearing. As the defendant aptly stated in his post hearing brief: "Equity jurisdiction once obtained in a divorce or dissolution proceeding will be retained for the purpose of administering complete relief." Pasquariello v. Pasquariello, supra, 168 Conn. 585.
V. Whether the defendant's failure to pay support since 1987 constitutes contempt.
"To find a party in contempt, a trial court must conclude that a party has disobeyed an order of the court. Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense . . . . A civil contempt is one in which the conduct constituting the contempt is directed against some civil right of an opposing party and the proceeding is initiated by him." Castro v. Castro, 31 Conn. App. 761, 764,627 A.2d 452 (1993).
"In a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order . . . . Such court action, however, must be supported by competent evidence." Nelson v. Nelson,13 Conn. App. 355, 367, 536 A.2d 985 (1988).
It is undisputed that the defendant unilaterally stopped making his weekly alimony payment of $250 in September of 1987, without obtaining approval from the court. The court finds the defendant's non-payment of alimony to be a wilful contempt.
The parties agree that any orders entered by this court are retroactive to September 22, 1987. The parties stipulated that the amount of arrearage as of the date this court heard testimony on October 21, 1996, was $93,780. Twenty-two weeks have passed between the stipulation and the present, thereby increasing the arrearage to $98,180.
The court finds the defendant's non-payment of support to be CT Page 4552 wilful contempt and orders the defendant to immediately resume paying the plaintiff $200 per week as per the terms of the original 1984 judgment. The defendant is further ordered to pay the plaintiff an additional $150 per week toward the arrearage for total weekly payments of $350. Said $150 weekly payment, if made until the arrearage is paid in full, shall purge the contempt so found by the court.
SKOLNICK, J.