[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
ON PLAINTIFF'S MOTION FOR CONTEMPT DATED AUGUST 9, 2001
This motion for contempt was heard on August 20, 2001, at which time the parties both testified as well as the plaintiffs brother and sister-in-law, Michael and Lauranne Duch. There were numerous exhibits entered in evidence. CT Page 11699
There were two issues raised by this motion. The first is whether the defendant should be held in contempt for violating a stipulation signed by the parties on June 19, 2001, and approved as a court order on the same date of dissolution when the judgment was entered. The court had canvassed the parties before approving the stipulation, and both were represented by counsel. It set forth twelve items of personal property that the defendant agreed to deliver to the plaintiff by August 5, 2001. At the hearing, the plaintiff admitted having received five items (Items b, c, d, e, and — except for the pad to the dining room table — all specified ii paragraph 6 of the stipulation) and waived his claim to two other items (a man's jewelry box and one-quarter of the "good" towels (Items j and l). The remaining items in contention were as follows:
(1) the 35" Mitsubishi TV set and related equipment (Item a);
(2) the Maytag side-by-side refrigerator (Item g);
(3) the DVD player and the DVDs he purchased (Items b and h);
(4) the CDs he purchased (Item i);
(5) the dishes, glasses, kitchen utensils, knives, forks, spoons, Tupperware,
and pots and pans (Item k).
To hold the plaintiff in contempt, the court must find the order was clear and unequivocal, and she wilfully and intentionally violated the order. Connecticut National Bank v. Investors Capital Corporation,29 Conn. App. 48, 56 (1992). The authority of a court to find a person in contempt is found in the court's need to enforce compliance with its orders. Tufano v. Tufano, 18 Conn. App. 119 (1989).
The plaintiff offered no expert opinion testimony on the present market value on the five items. He testified that he purchased and paid $1500 for the Mitsubishi TV set, and $1900 for the Maytag refrigerator about four years ago. He testified she was to deliver a Weber gas grill which cost him $600; however, the defendant was only to deliver a gas grill which she did, therefore, the court finds she complied wit this item.
The court finds the Mitsubishi TV set, the Maytag refrigerator, the dishes glasses and kitchen utensils, the towels, and the DVDs and CDs were all use personal property of a limited present market value. CT Page 11700
The defendant's only explanation for failure to comply was she left all of the items she agreed to deliver to the plaintiff in the garage for the movers to deliver to him. She did not know where they could have gone. She testified that she did not take them or give them away.
The defendant moved out of the marital home on April 29, 2001, and the home was foreclosed by a bank on May 5, 2001, and she did not know what may have happened to these items of personal property during that time. The court finds the defendant's explanation for not delivering these items unconvincing. The court further finds she was responsible to deliver these five items of personal property to the plaintiff as agreed and as ordered by the court on June 19, 2001, and, therefore, she is found to be in contempt for violating said orders.
The question of the present market value of these five items is more difficult because the only evidence of value was the price the plaintiff paid when they were purchased more than four years ago. After considering all the testimony, and the exhibits in evidence, the court finds the total present fair market value of the fly items in question to be presently worth $600, and orders the defendant to pay the plaintiff $50 per month for one year beginning on October 1, 2001.
The plaintiffs attorney is also entitled to a fee of $200 for her representation on this motion, and the defendant will pay her $40 a month for the next five month; beginning October 1, 2001.
The second issue in the motion involves 1,452 pieces of costume silver jewelry that are missing and unaccounted for. It was undisputed that these parties and the plaintiffs brother and sister-in-law, Michael and Lauranne Duch, went into the costume jewelry business in February, 1998, when they purchased about 3,500 pieces of this jewelry, paying about $3.25 per piece. The business was known as Trend, Inc., and they each invested $4000 into this business. There were no sales of this jewelry from when they started to the date this motion was filed, or about two and one-half years. They did one TV commercial and also encouraged their fourteen-year-old daughter, Jessica Duch, to promote sales with her classmates at Newtown High School. The attorney for the minor children, Dale Galbo, advised the court that Jessica gave away between seventy-five to one hundred pieces of this costume jewelry to her classmates but was unable to sell any of the jewelry.
In the agreement of June 19, 2001, the defendant agreed to return all the jewelry in her possession, which the plaintiff believed consisted of all of the 3,500 pieces, of which 1,452 were unaccounted for. The plaintiff believed that the 3,500 pieces were kept in a large cardboard box in the marital bedroom for the past two an a half years. The CT Page 11701 plaintiffs brother, Michael Duch, testified he received only about 2,048 pieces of the jewelry.
The defendant testified she did not remove or give away any of this jewelry The court finds that the plaintiff failed to prove by a preponderance of the evidence that the defendant appropriated for herself, sold, or gave away any of these 1,452 pieces of costume jewelry.
Therefore, the court does not find the defendant in contempt of paragraph 7 in the stipulation of June 19, 2001, in that she wilfully and intentionally violated the court orders as to the costume jewelry.
The plaintiffs brother, Michael Duch, testified he has in his possession the 2,048 pieces of costume jewelry delivered to him in escrow which he intends to sell at a tag sale.
The court orders him to sell this jewelry at a tag sale or to a dealer at the highest price he can obtain on or before November 1, 2001, and divide the net proceeds in accordance with paragraph 7 of said stipulation.
Petroni, J.T.R.