[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR ORDER DATED OCTOBER24, 1994 AND MOTION FOR MODIFICATION DATED JANUARY 5, 1995 ANDDEFENDANT'S MOTION FOR CONTEMPT DATED NOVEMBER 16, 1994
The court heard testimony and received numerous exhibits relating to the above captioned motions. Some of the relevant background facts are not in dispute. The original trial in 1983 was contested and a Memorandum of Decision and a judgment of dissolution were entered on November 9, 1983 (Levine, J., State Trial Referee). The defendant was awarded child support and lifetime alimony as follows:
 "The plaintiff is to pay to the defendant as periodic, unallocated alimony and support for herself and the minor children the sum of $65,000 per year in twelve equal monthly installments on the 10th day of the month beginning November 10, 1983. On the eighteenth birthday of each child, the annual amount shall be reduced by $15,000." (Memorandum of Decision, page 4.)
The $65,000 unallocated alimony and child support order has now been reduced to an alimony order of $35,000 because both minor children have reached their majority. This order had a further provision allowing the defendant to earn up to $25,000 a year without it being considered a substantial change in CT Page 12905 circumstances. When the defendant's earnings from employment exceeded $25,000 a year, the plaintiff would receive a credit of one-half of that amount.
 "It is contemplated at this time that the defendant will continue her present part-time employment and that in the future, she will be employed full-time, however, such employment shall not be considered a change of circumstances until her gross annual income from earnings shall exceed Twenty-five Thousand Dollars. One-half of the amount by which her earnings exceed Twenty-five Thousand Dollars shall be deducted from the periodic unallocated alimony and support hereinbefore awarded." (Memorandum of Decision, page 6)
The parties were in disagreement and presented considerable evidence on the meaning of the language in the order referring to the defendant's gross annual income from earnings (emphasis added). In confirming Judge Levine's order in Eldridge v.Eldridge, 4 Conn. App. 489 (1983), the appellate court stated on page 494 as follows:
 In this case, the court, in the exercise of its discretion, designated a dollar amount above which it felt the defendant's self earned income signified an adequate level of independence to constitute a change in circumstances. At that point, her entitlement to alimony under the initial award would be subject to modification upon motion by the plaintiff. The condition, which limits but does not preclude a later court from modifying the plaintiff's alimony obligation, is clear and unambiguous. The decree spells out with certainty the extent to which modification is precluded, and we will not inject into its language ambiguities which are not there.
The appellate court confirmed that the language applied to the defendant's self earned income which signified an "adequate level of independence to constitute a change in circumstances." The order refers to earnings from employment and does not include income from dividends, interest, medical and pension benefits, or gifts she would receive from her parents. The court finds as a matter of law that the alimony credit to the plaintiff applies only to her earnings as a school teacher which exceeds the $25,000 threshold. CT Page 12906
In Fahy v. Fahy, 227 Conn. 505, 507 (1993), the supreme court overruled the decision in Darak v. Darak, 210 Conn. 462 (1989). In Fahy, supra, the supreme court allowed a trial court to modify any support or alimony order when the court finds a substantial change in circumstances had occurred under § 46b-86 of the General Statutes regardless of the date the original order was entered or whether it was contemplated or not. In the recent case of Borkowski v. Borkowski, 228 Conn. 729 (1994), the court reaffirmed the procedure a trial court must follow before it may modify a previous court order. In short, the court must first decide whether there has been a substantial change in circumstances as to either party pursuant to § 46b-86 of the General Statutes.
In this case, the plaintiff must prove that there has been a substantial change in the circumstances of either party from the date of the original judgment to the present, approximately twelve years. Theonnes v. Theonnes, 181 Conn. 111, 113-114. The court must compare the parties' circumstances as they existed on the date of judgment, November 9, 1983, to what they are now. The court must also consider the statutory criteria in § 46b-82, the alimony statute, to decide what is presently fair and equitable. The criteria includes, without limitation, the length of the marriage, the causes of dissolution, the ages, health, station, occupations, amounts and sources of income, vocational skills, employability, the estates and the present needs of the parties. Borkowski v. Borkowski, supra.
Our courts have consistently held that the purpose of alimony is to meet "one's continuing duty to support." Blake v. Blake,211 Conn. 485, 498 (1989). Section 46b-86 "reflects the legislative judgment that continuing alimony payments should be based on current conditions." Rubin v. Rubin, 204 Conn. 224, 228
(1987).
Some of the background facts are not in dispute. The parties were married for seventeen years at the time of the divorce. The plaintiff was 37 and the defendant 36 years of age and they are now 54 and 53 respectively. Both are in good health and able to work full time. They both live alone in large homes and enjoy comfortable lifestyles and have not remarried.
From the testimony of the defendant, her financial affidavits and the evidence introduced, the court finds the defendant's CT Page 12907 present net monthly income from earnings at about $2,990 and not $2,019.24 because there should be added $788.22 (tax annuity) and $192.54 (teacher retirement) income together with income from interest and other sources of $697.12 for a total monthly income of about $3,700. In 1983, when the original orders were entered, the defendant earned a gross annual salary of about $3,780 as a part-time teacher's aide in Westport, Connecticut, without any benefits. In 1995, she is employed as a full time teacher first grade teacher in New York City under a contract, with tenure, medical insurance benefits and a vested pension plan, with a gross annual salary of $49,690 or $4,140.84 a month.
In 1983, the defendant listed her living expenses at $8,018.46 a month and in her current financial affidavit, she lists them at $4,988 per month. Also in 1983, the defendant's financial affidavit listed equity of $142,000 in her Westport home, $3,892.32 in bank accounts in trust for the minor children and $360 in her checking account for total assets of about $152,193. In her current financial affidavit, she lists a Smith Barry investment account of about $143,000, voluntary annuity and retirement savings of about $114,000 and an IRA account of $11,000, personal bank accounts of $12,000 and joint accounts with her father of $22,600, as well as Norwalk Savings stock worth $8,000 for total liquid assets of over $310,000. Her total assets have increased from $152,193 to $481,064.72.
At the time of the judgment, the parties' two children, Evan and Pamela, were minors, and they are now 24 and 26 years of age and both have graduated from college and are self-supporting.
The court finds the difference between the defendant's current income and living expenses to be approximately $1,250 per month.
After considering all the testimony and the evidence and exhibits presented, the court finds a substantial change in defendant's financial circumstance has occurred from the date of the original alimony order in 1983 to the present time. It is undisputed that her teacher's salary increased from about $3,780 in 1983 to $49,690 in 1995 and her liquid cash assets from $300 to about $310,000 in 1995. This constitutes a substantial change in her financial circumstances pursuant to § 46b-86 of the General Statutes; therefore, the plaintiff's motion for modification is granted. CT Page 12908
The plaintiff claims his annual income has substantially decreased since the divorce in 1983, having lost his job in January, 1994. In his current financial affidavit dated May 17, 1995, he lists his gross monthly income from fees earned as a consultant at $13,000 a month. After deducting his expenses of $2,000 and deductions for taxes of $2,500, he earns $8,500 a month. In 1983, his gross annual income as a certified public accountant with Ernst Whinney was about $155,250 and his net monthly income was listed at $4,822.05. His gross annual income from 1990 through 1994 ranged from $170,995 to $256,196.
The plaintiff testified his position was eliminated in 1994 and he has been unsuccessful in finding a position comparable to the one he previously held. Nevertheless, he enjoys a comfortable lifestyle and resides in a 4,800 square foot, ten room house in Weston, Connecticut. His living expenses are $14,800 a month, and he claims to borrow money to maintain this high standard of living. His credit card statement in 1994 listed about $88,000 in purchases over a ten month period. He has taken vacations in the United States and the Cayman Islands where he owns a time share condominium. In 1994, he made improvements of over $50,000 on his Weston home. His 1994 refund on his federal tax return of $34,364 was applied to his 1995 estimated tax. His assets have increased from about $256,340 in 1983 to $1,365,000 as of May 17, 1995.
Based on all the evidence presented, the court finds that there has been no substantial change in the financial circumstances of the plaintiff since the original judgment. The court has previously found a substantial improvement in the defendant's financial circumstances since the original alimony order was entered in 1983.
After considering all the evidence, the court orders the alimony award to be reduced from $35,000 a year to $15,000 a year payable at $1,250 a month beginning November 1, 1995. The plaintiff shall pay the defendant this periodic alimony until the death of either party, the defendant's remarriage or statutory cohabitation pursuant to § 46b-86(b) of the General Statutes. The court further orders the plaintiff to notify the defendant in writing when he obtains regular employment as a certified public accountant, or in any field, and the amount of compensation he will receive. Both parties are ordered to exchange federal income tax returns by May 1 of every year hereafter.
The defendant filed her motion for contempt on November 16, CT Page 12909 1994. The plaintiff conceded the terminated paying any alimony since August 7, 1994. The court finds the alimony arrearage to be $41,875 as of September 10, 1995, and continuing at $2,916.67 per month thereafter to the date of this judgment. The plaintiff's decision to terminate paying alimony was based on his belief that Judge Levine's order entitled him to total alimony credits from the defendant's credits of $225,195. (See plaintiff's exhibit A.) The short answer to that claim is that he was required to file a motion for modification before he would be entitled to any credit. Eldridge v. Eldridge, supra, page 494. The plaintiff knew or should have known that he was not entitled to terminate the order unilaterally himself. The plaintiff is a college graduate, and the court found him to be an intelligent individual with a successful career as a certified public accountant for many years. It is elementary that court orders must be complied with until they are modified by a court or successfully challenged.Conn. National Bank v. Investors Capital Corp. , 29 Conn. App. 48,56 (1992).
The court finds the plaintiff in wilful contempt of the alimony orders. Furthermore, he failed to prove his inability to comply with them which would have been a defense to the contempt.Zivic v. Zivic, 26 Conn. 5, 10.
The court may award a reasonable attorney fee and costs after a finding of contempt pursuant to § 46b-87 of the General Statutes. The defendant's attorney filed an affidavit certifying his fees to be $33,731.25 plus a sheriff's fee for service of $67.60. He attached computer printouts for all services rendered and the time spent on these motions between August 11, 1994 through August 30, 1995. The court, therefore, finds his fees reasonable and awards the defendant attorney fees of $15,060.50 plus $67.50 for the sheriff's fee for a total award of $15,067.50.
In the plaintiff's motion for order and modification, he sought various orders as to alimony credits due him for 1987 when the defendant's earnings exceeded the threshold of $25,000. The defendant concedes her gross earnings as a full time school teacher began exceeding the $25,000 threshold in the alimony order and a total credit of $57,765.28 have accumulated over the past nine years (see defendant's schedule 1). The defendant urges the court to invoke the defense of laches and equitable estoppel. She claims the plaintiff held back until July, 1994 to raise the issue after she paid $108,607.75 for their children's college CT Page 12910 expenses. The court finds no agreement between the parties as to payment of these college expenses nor did the plaintiff ever agree to waive his alimony credit. The court finds the defendant paid one-half of two children's college expenses voluntarily; therefore, the defenses of laches and equitable estoppel do not apply under these facts.
The defendant is also a college graduate and is an intelligent, refined person. Since 1987, she has been employed as a full time public school teacher in New York City. She also knew or should have known the alimony order provided a one-half credit to the plaintiff when her earnings exceeded $25,000 from her full time employment. The court has the duty to interpret Judge Levine's order as a matter of law. It finds an alimony credit of $57,765.78 in the plaintiff's favor. Judge Levine clearly stated that when the defendant's earnings from employment exceeds $25,000 one-half of that amount shall be deducted (emphasis added) from the alimony order. (See page six of the Judge Levine's Memorandum of Decision.)
The plaintiff is entitled to a total alimony credit of $57,765.28 under Judge Levine's order.
The alimony arrearage due the defendant was $41,875 as of September 10, 1995, increasing monthly thereafter at $2,916.65 per month for a total arrearage of $47,708.30 as of this date. The attorney's fees and costs of $15,067.50, were also found in favor of the defendant on her contempt motion for a total credit to her of $62,775.80. This amount shall be deducted from the plaintiff's alimony credit of $57,765.28 (see Schedule 1, Defendant's Claims for Relief) leaving a credit balance of $5,010.52 due the defendant payable within sixty days of this order.
ROMEO G. PETRONI, JUDGE