[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FORMODIFICATION OF ALIMONY AND PLAINTIFF'S MOTION FOR CONTEMPT
By way of background, a judgment of the dissolution was entered by this court on December 22, 1993, ending a twenty-one year marriage (Petroni, J.) A separation agreement signed by the parties was incorporated into the judgment, which in relevant part provided for the defendant to pay the plaintiff periodic alimony of $400 a week for the first three years and a week for the next seven years ending on December 23, 2003. The defendant CT Page 1280 also obligated himself to pay the plaintiff a lump sum alimony award of $185,000 upon her vacating the marital home on or before December 30, 1996.
There is no dispute that the defendant stopped paying the $600 alimony order on or about June 6, 1997, claiming he had retired on Social Security on or about June 1, 1997, and his retirement caused a substantial change in his financial circumstances.
When considering this motion to modify or terminate alimony orders pursuant to § 46b-86a, the moving party must first prove a substantial change in his or her circumstances has occurred to either party from the date the original alimony order was entered on December 22, 1993, the date of the judgment, to the present time. Theonnes v. Theonnes, 181 Conn. 111-113 (1980). If the court finds a substantial change in the circumstances of either party, it then must consider the statutory factors in § 46b-82 of the Connecticut General Statutes, the alimony statute, and decide what, if any, alimony would be fair and equitable at the present time. Borkowski v. Borkowski,228 Conn. 729, 737-38 (1994). These factors are relevant in deciding whether an alimony order may be modified or terminated since the prior order was entered and primarily have to do with the needs and financial resources of the parties. Sanchione v. Sanchione,173 Conn. 397, 401-402 (1977). Other factors which the court is required to consider are the present age, health, station, occupation, employability and the cause of the dissolution and the amount and sources of income of the parties. Hardisty v.Hardisty, 183 Conn. 253, 258-59.
On December 11, 1997, a hearing was held on both motions, the defendant's motion for modification and the plaintiff's motion for contempt. Both parties testified as well as the defendant's accountant and his attorney. Some of the background facts are not in dispute.
The defendant, a carpenter by trade, has been in the building business for the past twenty-five years constructing and selling residential homes in the Bridgeport region. From approximately 1970 to 1981, he did business through a corporation, Robert Maricondo, Inc., in which he was the sole stockholder. In 1981, he transferred all the stock and assets of that corporation to M M Building Associates, Inc. (hereinafter referred to as M M Builders) a corporation in which Jon Maricondo, his son, owned CT Page 1281 all the stock. The defendant was the President and Treasurer of the son's corporation, and the defendant continued to build and sell residential homes, as he had been doing under his own corporation, to the present time.
At the time of the judgment, the defendant's financial affidavit dated December 22, 1993, listed gross weekly wages paid to him by M M Builders of $1,300, and after deductions, a net weekly wage of $825. His total weekly expenses were $1,545 with net assets of $101,200, which consisted of an $89,000 loan from M M Builders and $12,700 for a gun and coin collection. The defendant had no cash or banks listed in this affidavit. In his current affidavit dated December 11, 1997, he lists a weekly wage of $200 from M M Builders and $287 from Social Security for a total net weekly income of $487. He claims this reduction of income and his retirement on Social Security for health reasons warrants a modification or termination of the $600 alimony order pursuant to § 46b-86 (a).
The plaintiff's affidavit filed at the time of judgment listed no income from employment but showed she was receiving temporary alimony and child support of $1,000 a week from the defendant. Her net assets were $22,528 and total liabilities amounted to $1,710.09. Her current affidavit dated December 11, 1997, lists no income from employment and living expenses of $588 per week. Her net assets are now $147,155, of which $134,000 is the value of the condominium in which she now lives.
The plaintiff is presently 59 years of age and her efforts over the past four years to find a job has been unsuccessful. She has been interviewed numerous occasions and was told she lacks the secretarial and computer skills needed in the present job market. She lists no income from employment on her current financial affidavit and testified she has been living on the $50,000 she received on May 31, 1997, as part of the lump sum alimony award.
There is no dispute the defendant paid the $400 per week alimony order for the first three years and the $600 per week alimony order until June 6, 1997, when he stopped making any payments claiming he retired on social security causing a substantial change in his financial circumstances. His reason for retiring at age 67 was because he had prostrate cancer and a heart condition, which now warrants a modification or termination of the $600 per week alimony order pursuant to § 46b-86(a) CT Page 1282 of the Connecticut General Statutes.
From the defendant's own testimony and the testimony of Jon Maricondo, his 37-year old son from a prior marriage, the court finds the following facts. Prior to June 6, 1997, the defendant was receiving wages of $1,000 per week and living rent free in a residence-office owned by M M Builders, the son's corporation. The defendant also had use of a pickup truck and an automobile with all expenses paid by the corporation. When the defendant went on Social Security on June 1, 1997, he and his son agreed to a reduction of the defendant's wages from $1,000 to $200.00 a week. The defendant also agreed to pay his son rent of $200.00 a week and he would endorse the weekly wage check back to the son (see pages 11 and 12 of Transcript, Testimony of Jon Maricondo). Since the date of judgment and prior to this agreement, the defendant was living in the same premises rent-free.
In the judgment, the defendant also agreed to pay the plaintiff lump sum alimony of $185,000 by December 31, 1996. This alimony order was satisfied by the plaintiff accepting title to a condominium owned by M M Builders valued at $135,000 and accepting a promissory note of $50,000 from the defendant (see plaintiff's exhibit 1). The note was paid to her on May 30, 1997 by check from Robert T. Rosati, Attorney for M M Builders, who also represented the son (see plaintiffs exhibit 4).
The court found credible and probative the son's testimony that he or his corporation would give the defendant a loan or whatever money was in the corporation to satisfy any of his obligations. (See Transcript at p. 18, testimony of Jon Maricondo.) The defendant had worked for the corporation full time for the past sixteen years supervising the construction of residential houses, and in 1997, was supervising and coordinating construction of four houses. In the prior year, 1996, this corporation completed and sold two houses. In 1997, the defendant obtained the necessary building and zoning permits, selected the subcontractors and delivered building materials to the job sites.
From all of the testimony, the court finds the defendant is performing the majority of the work on the four houses under construction and has been primarily responsible for running the son's corporation for the past sixteen years. For the past seven years, the son has been working full time for Home Depot and is presently an assistant manager working between 45 to 50 hours per week. CT Page 1283
The court further finds the health problems claimed by the defendant did not prevent him from operating this building business. There was no medical evidence presented to the contrary, and when on the witness stand, he appeared in good health. The court finds that the defendant is presently supervising the construction of four houses, twice as many as in 1996. To retire is defined in Websters Ninth New Collegiate Dictionary as "to withdraw from one's position or occupation; conclude one's working or professional career." At age 67, while the defendant is eligible and qualified to receive Social Security benefits, he has not retired. A voluntary reduction in wages of $800 a week is not retirement or a substantial change in circumstances. The court finds the defendant's agreement with the son to this reduction in effect deprived the plaintiff of the alimony she was entitled to receive. The primary purpose of alimony is to continue the duty to support a spouse. Tobey v.Tobey, 165 Conn. 742, 749 (1974). The defendant has an earning capacity between $1,000 to $1,300 a week. An alimony order can be based on the earning capacity, especially in this case where the defendant and his son voluntarily agreed to a reduction of $800 a week in wages. Hart v. Hart, 19 Conn. App. 91, 94 (1989).
This case is clearly distinguishable on the facts from the decision in Misinonile v. Misinonile, 35 Conn. App. 228, 232
(1994) in which retirement on Social Security was upheld as a substantial change in circumstances. In that case, the defendant had actually retired and was receiving no wages or income from employment. There was no evidence in Misinonile that the defendant retired for the purpose of avoiding or reducing his alimony obligation.
The defendant's motion for modification is denied. The defendant has failed to prove his retirement constitutes a substantial change in his circumstances. Therefore, the defendant shall continue to pay to the plaintiff the sum of $600.00 per week until December 23, 2003.
The plaintiff's motion for contempt is granted. Orders of the court must be followed until they have been modified or successfully challenged. Connecticut National Bank v. InvestorsCapitol Corp., 29 Conn. App. 48, 56 (1992). As of December 11, 1997, the arrearage was $14,956. As of the date of this decision, January 15, 1998, there is an additional arrearage of five (5) weeks at $600 per week or $3,000, for a total arrearage of CT Page 1284 $17,956 due the plaintiff.
The defendant is ordered to pay the arrearage of $17,956 to the plaintiff on or before January 16, 1999.
With respect to the request for attorney's fees, no evidence was presented at the hearing; however, the court orders each party to pay their own attorney.
It is so ordered.
PETRONI, J.