TOWN OF VOLUNTOWN *v.* JULIUS RYTMAN ET AL.
(7748)

DUPONT, C. J., DALY and NORCOTT, Js.

Argued November 9, 1989—decision released April 17, 1990

*Donald R. Beebe,* for the appellant (named defendant).

*Richard J. Duda,* with whom, on the brief, was *W. Bradford Goodwin,* for the appellee (plaintiff).

*Ben M. Krowicki,* for the appellee (defendant Connecticut National Bank).

DALY, J. The plaintiff town of Voluntown instituted this action pursuant to General Statutes § 12-181 against the named defendant, Julius Rytman,[1] for the foreclosure of municipal tax liens owed on a poultry farm for the tax lists 1984 through 1986. The defendant appeals from the trial court's judgment ordering a foreclosure by sale of the entire property following the denial of the defendant's motion to order a sale of a portion of the property. On appeal, the defendant claims that the trial court erred (1) in denying his motion to order a sale of a portion of the property, (2) in refusing to hear evidence concerning the apportionment of the property, (3) in denying his two motions to set aside the default for failure to disclose a defense, (4) in not considering evidence relating to the value of the premises as an egg production facility, and (5) in denying his motion for a stay of the proceedings. We find no error.

The relevant procedural history is as follows. In February, 1988, the plaintiff began a strict foreclosure action against Rytman, the owner of the premises, and a number of encumbrancers. The premises, known as

---

[1] This action also named other encumbrancers. The named defendant, however, is the only defendant who has appealed and in this opinion the word "defendant" refers to him only.

the Jalkanen egg farm, consists of a 64.67 acre[2] tract that is traversed by a highway. On one side of the highway is the defendant's residence located on 1.74 acres. On the other side of the highway is the egg farm containing several buildings (egg production facility), all of which are located on 62.93 acres.

In May, 1988, the defendant filed a motion to stay the present foreclosure action until a pending foreclosure action that had been filed by the Connecticut National Bank (CNB), the next succeeding encumbrancer, was resolved. The defendant claimed that if he was successful in that proceeding, he could pay the municipal tax liens owed to the plaintiff. On June 20, 1988, the court denied the motion to stay and granted the plaintiff's motion for default for failure to plead and disclose a defense.

On June 20, 1988, the plaintiff offered the expert testimony of its tax assessor who testified that the present market value of the property was $452,800, even though the assessed value was $1,680,000. The court was not satisfied with this evidence and continued the matter for further evidence of value. On June 23 and June 30, 1988, the defendant filed motions to open the default for failure to disclose a defense. In the first motion, the defendant asserted two defenses: (1) He disputed the amount of the tax owed to the town; and (2) he claimed that the town did not come into this equity proceeding with clean hands because of the difference between the assessed value and the market value of the premises. The second motion asserted that the plaintiff had committed deceptive trade practices

---

[2] The land description in the deed provided to the court states that the entire tract contains "52 acres, more or less." The evidence, however, was that there were 1.74 acres of land and a residence on one side of the highway and 62.93 acres of land and several buildings that comprised the egg production facility on the other side of the highway.

in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a. The court denied these motions on November 7.

On December 16, 1988, the defendant made an oral motion for foreclosure by sale. A hearing was held and both sides presented expert testimony on the value of the premises. The court found that the debt owed the plaintiff was $113,541.90 and continued the matter to December 21 so that the defendant could present an additional expert witness on value. On that date, the defendant filed a motion for foreclosure by sale of a portion of the premises. The defendant sought to have sold the 1.74 acre lot and residence, and a building lot across the street. The matter was continued to January 9, 1989, when the court heard argument on the defendant's motion for foreclosure by sale of a portion of the premises and motion to present additional evidence regarding the feasibility of apportioning the property that was filed December 23. The court denied the two motions and instead ordered foreclosure by sale of the whole tract. In addition, the court found that the value of the property was $800,000,[3] appointed a committee and three appraisers; see General Statutes § 49-25; and ordered that the sale be made on June 10, 1989, at 12 noon. The defendant brought this appeal.

I

The defendant first claims that the trial court erred in denying his motion for a foreclosure by sale of a portion of the property. Specifically, the defendant asserts that the trial court erred in concluding that it did not have authority to grant this type of foreclosure. We do not agree.

General Statutes § 12-181 permits the trial court to order the sale of real estate to satisfy the foreclosure

---

[3] The court valued the residence at $20,000, the 1.74 acres at $80,000, the 62.93 acres at $170,000 and the egg production facility at $550,000.

of municipal tax liens. See also General Statutes § 49-24. The procedure for the foreclosure of municipal tax liens, like all other liens is governed by General Statutes § 49-25. Cf. General Statutes §§ 12-182 through 12-194 (procedure for summary foreclosure of municipal tax liens). Specifically, § 49-25 provides in pertinent part: "When the court in any such proceeding is of the opinion that a foreclosure by sale should be decreed, it shall . . . direct whether the property shall be sold as a whole or in parcels . . . ." " 'The foreclosure of a mortgage by sale is not a matter of right, but rests in the discretion of the court.' " *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 184, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). Similarly, the trial court, in its discretion, has the authority to allow a foreclosure of municipal tax liens by the sale in parcels of land rather than the entire tract. General Statutes § 49-25; see also *New England Mortgage Realty Co.* v. *Rossini,* 121 Conn. 214, 219, 183 A.2d 744 (1936). Although a trial court has the discretion to order a sale of a portion of premises, the court did not abuse its discretion in this case when it denied the defendant's motion.

In his motion, the defendant relied on *New England Mortgage Realty Co.* v. *Rossini,* supra, and General Statutes § 49-25. In the present case, the trial court determined that it did not have authority to grant the defendant's motion for foreclosure by sale of a portion of the premises because of the Supreme Court's holding in *New Haven Bank* v. *Jackson,* 119 Conn. 451, 177 A.2d 387 (1935). In *New Haven Bank* v. *Jackson,* supra, a strict foreclosure proceeding, the defendants requested that the court apportion "so much of the property . . . as would, upon foreclosure and appropriation, satisfy it, leaving the remainder subject only to their mortgage." Id., 453–54. In that case, the

court concluded that apportionment was not proper and rendered judgment for the plaintiff. The court reasoned that if the defendant were allowed relief by apportionment, that relief "would be demanded in most foreclosure actions and they would resolve themselves quite largely into actions in the nature of partition suits, not within the scope of that remedy as established by the statutes. *Spencer* v. *Waterman,* [36 Conn. 342, 344 (1870)]." Id., 454–55.

The defendant relied on the Supreme Court's statement in *New England Mortgage Realty Co.* v. *Rossini,* supra, that "[t]he rights of the mortgagee are limited by the substantial necessities of such a remedy and in a foreclosure by sale he is entitled to a sale of the whole mortgaged property only if that is necessary in order to satisfy the mortgage debt." This reliance is misplaced. *New England Mortgage Realty Co.,* involved a strict foreclosure proceeding in which, unlike the present case, the mortgagor had conveyed parcels of the encumbered property subsequent to the date of the mortgage. In addition, *New England Mortgage Realty Co.* involved the application of the rule "that where all the property covered by a mortgage has been sold in parcels to different purchasers at different times, upon foreclosure of the mortgage the parcels are liable in inverse order of alienation." Id., 216. There was no such previous sale of parcels in the present case, nor was there any evidence presented to the court that showed that in a deed description there were several parcels of land rather than one parcel.

The trial court in the present case also determined that General Statutes § 49-25 did not require a sale of parcels because the description of the property filed with the court was not sufficient to warrant a sale by parcels. The court reasoned that because it was given a running description of the property in rods and not feet, and was not presented with any type of record,

namely an accepted survey subdivision approved by the planning commission that would enable it to make a division, it would not order a sale in parcels. The court had discretion under § 49-25 to order a sale in parcels or to refuse to order a sale in parcels. Although there was some testimony as to the divisibility of this parcel; see footnote 2, supra; the court did not abuse its discretion when it concluded that the land should not be sold in parcels.

In the case of *Fidelity Trust Co.* v. *Irick,* 206 Conn. 484, 490, 538 A.2d 1027 (1988), our Supreme Court stated that "[i]n a foreclosure proceeding the trial court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to subsequent encumbrancers and the owner." In the present case, where there were several encumbrancers who had encumbrances on the entire premises, it would have been unfair to permit a sale of a portion of the encumbered premises, free of the succeeding encumbrances, because it would involuntarily reduce the security interest of those encumbrancers and force them to settle for less than what they had bargained for. Furthermore, if the defendant were allowed a sale such as this, these encumbrancers might never collect their due. The trial court did not abuse its discretion when it denied the defendant's motion for foreclosure by sale of a portion of the premises.

## II

The defendant next claims that the trial court erred in not permitting evidence on the apportionment of the property. The record indicates that the trial court would not allow this evidence because the evidence was not relevant to show that the land could be subdivided; it pertained only to the value of the premises that the defendant wanted to be sold and to the alleged fact that the defendant had a ready, willing and able buyer to

purchase one portion of the property. While there is no precise test for relevancy, evidence is admissible if it tends to establish a fact in issue; *Dunham* v. *Dunham,* 204 Conn. 303, 324, 528 A.2d 1123 (1987); and if its probative value is not far outweighed by its prejudicial effect. *State* v. *Fritz,* 204 Conn. 156, 169, 527 A.2d 1157 (1987). The trial court has broad discretion in determining the admissibility of evidence and its rulings will not be disturbed absent a showing of a clear abuse of discretion. *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986). Because the court properly determined that one of the facts in issue pursuant to a motion to sell in parcels was whether the property could be subdivided into parcels and because the evidence was not relevant to establish that the premises could be subdivided into parcels, the court did not abuse its discretion in refusing this evidence.

### III

The defendant next claims that the court erred in denying his two motions to set aside the default for failure to disclose a defense. Specifically, the defendant claims that the court should have permitted his two defenses to the foreclosure and his claim under CUTPA. General Statutes § 42-110a et seq. Although they were not timely, the defendant claims they should have been allowed because he was not aware that the town was taxing his property at a higher assessed value than it believed it was worth in today's market. We do not agree.

At the outset, we note that, because judgment had not been rendered on the default for failure to disclose a defense at the time the defendant filed his two motions to set aside that default,[4] the govern-

---

[4] We note that there was considerable confusion in the record as to whether judgment of default had been rendered at the time the defend-

ing rule of practice is Practice Book § 376, and not § 377, as alleged by the defendant.

"Pursuant to Practice Book § 376 '[a] motion to set aside a default when no judgment has been rendered may be granted by the court for good cause shown upon such terms as it may impose.' The determination of whether to set aside the default is within the discretion of the trial court. See *White's Appeal,* 75 Conn. 314, 318, 53 A. 582 (1902)." *Skyler Limited Partnership* v. *S.P. Douthett & Co.,* 18 Conn. App. 245, 248–49, 557 A.2d 927, cert. denied, 212 Conn. 802, 560 A.2d 984 (1989). " 'A trial court's conclusions are not erroneous unless they violate law, logic, or reason or are inconsistent with the subordinate facts in the finding.' *Kaplan & Jellinghaus* v. *Newfield Yacht Sales, Inc.,* 179 Conn. 290, 292, 426 A.2d 278 (1979)." *Costello* v. *Hartford Institute of Accounting Inc.,* 193 Conn. 160, 167, 475 A.2d 310 (1984). Because the defendant's three claims would not have been good defenses, the trial court's finding that the defendant had not shown good cause did not violate law, logic or reason, and was therefore, not an abuse of discretion.

In his motion to set aside the default, the defendant first challenged the amount of the assessment and claimed that the amount was wrongfully or excessively assessed. This claim was untimely and would not have been a good defense to the foreclosure. "The claim that the property had been wrongfully or excessively assessed could have been appealed in one of two ways: (1) to the board of tax review and from there, within two months, to the Superior Court pursuant to §§ 12-111 and 12-118; or (2) by direct action to the court within one year from the date when the property was last evaluated for purposes of taxation pursuant to

ant's motions were filed. This confusion included the defendant's representation to the trial court, *Noren, J.,* who denied his motions, that judgment had been rendered following the entry of a default by the court, *Walsh, J.*

§ 12-119." *Norwich* v. *Lebanon,* 193 Conn. 342, 346–48, 477 A.2d 115 (1984); see also *Hartford* v. *Faith Center, Inc.,* 196 Conn. 487, 491–92, 493 A.2d 883 (1985).

The defendant then alleged a second defense to the foreclosure, namely, that the plaintiff did not come into the proceeding with clean hands when it requested that the value of the property be the lower present market value for the purpose of strict foreclosure yet it taxed the property at the higher assessed value. This too is not a good defense.

"In Connecticut, the remedy for variations in the effect of market conditions on different parcels is set forth in General Statutes § 12-62. The remedy of revaluation was established by the legislature . . . that the remedy need only be available once each decade. . . . By way of contrast, § 12-64 'is concerned with the manner of taxation, not the frequency of valuation, and it does not purport to require assessors to be updated on their valuations at all times. . . . [A]s a practical matter, assessors cannot be expected to revalue each year, even though changes which affect property values may occur within a given year.' " (Citation omitted.) *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 629–30, 438 A.2d 782 (1981); see also *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 437–38, 525 A.2d 91 (1987), reiterating the court's holding in *Uniroyal, Inc.* v. *Board of Tax Review,* supra.

In the present case, the defendant has alleged nothing more than the following: The town, through the testimony of its assessor, believed that there had been a change in the market conditions that resulted in the reduction of the current market value of the property. The present market value is the value that the court should consider when determining the present value of the property for the purposes of strict foreclosure, even though the town continues to tax the property at

the higher assessed value. Whatever the town was alleged to believe, it was not required to perform an interim revaluation of this property for the purposes of taxation. *Uniroyal, Inc.* v. *Board of Tax Review,* supra; *Ralston Purina Co.* v. *Board of Tax Review,* supra. The defendant, therefore, did not have a good defense when he alleged that the town was acting in bad faith because of its belief that the property was worth less than the assessed value for the purpose of obtaining the property by strict foreclosure.

The defendant also alleged a violation of CUTPA. It is not necessary to determine whether CUTPA applies since, even if the plaintiff could be sued under CUTPA, the allegation that the plaintiff had engaged in deceptive trade practices would fail, and the defendant would be deprived of a good defense. The defendant argues that the deceptive trade practices the plaintiff had committed refer to the allegation that the town believed that the property had decreased in market value, and continued to tax at the higher assessed value, yet based the value for the purposes of strict foreclosure at the lower market value. For the reasons previously discussed, this defense must fail, and, accordingly, the defendant's third claim of error must also fail.

IV

The defendant's fourth claim is that the trial court erred in valuing the property at $800,000. Specifically, the defendant claims that the trial court failed to consider the testimony of his expert, Boris Bravo-Ureto, an agricultural economist, that the value of the egg production facility was worth $1,405,250, and the defendant's own testimony that the overall value of the farm was $2,254,000. This claim has no merit.

The trial court heard extensive evidence from both the plaintiff's and the defendant's appraisers as well as the testimony of the defendant regarding both the

value of the egg production facility as well as the overall value of the property. In addition to the testimony of the defendant and Bravo-Ureto, the court also heard the defendant's expert testimony of James Platt, a real estate appraiser, who valued the egg production facility and the land underneath these buildings at $680,000 and on cross-examination stated that $118,000 of the amount was the value of the land underneath the buildings and $550,000 was the value of the egg production facility. Platt also gave an overall value of the property of $822,000.

The plaintiff also presented two expert witnesses. Raymond Millar, the town assessor, valued the egg production facility at $194,800 and gave an overall value of $452,000 and Herbert Riess, gave a value of $452,000 to the egg production facility and $614,000 overall.

The trial court was presented with conflicting evidence as to the value of the property and specifically as to the value of the egg production facility and it is apparent that credibility was a crucial factor. Faced with a conflict between the testimony of the defendant and Bravo-Ureto, and the testimony of the other experts, "the court, as the trier of fact, was privileged to adopt the testimony it believed to be more credible." *Di Diego* v. *Zarro,* 19 Conn. App. 291, 294, 562 A.2d 555 (1989), citing *Hartford Federal Savings & Loan Assn.* v. *Tucker,* supra, 183. " 'The acceptance or rejection of the opinion of the expert witness is a matter peculiarly within the province of the trier of fact and its determination will be accorded great deference by this court.' " *Di Diego* v. *Zarro,* supra, 295.

As to the trial court's determination of the overall value of the property, we also conclude that the court did not commit error. " 'The determination of . . . value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses,

and reached by weighing those opinions in light of all the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it. *Appeal of Cohen,* 117 Conn. 75, 85, 166 Atl. 747 [1933].' *Lomas Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 233, 188 A. 433 (1936)." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* supra.

The trial court's conclusion, that the value of the egg production facility was $550,000 and the overall value was $800,000, was necessarily based upon the opinions of the appraisers and finds support in the evidence. "It is axiomatic that the determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." Id.; see also B. Holden & J. Daly, Connecticut Evidence § 118c (1988). The trial court did not err in valuing the property at $800,000.

V

The defendant's fifth claim is that the court erred in denying the defendant's motion to stay the proceeding pending the outcome of the foreclosure action that was instituted by CNB before the liens were placed on the defendant's property.

"In the absence of a statutory mandate, the granting of an application or a motion for a stay of an action or proceeding is addressed to the discretion of the trial court, and its action in granting or denying application will not be disturbed by an appellate court unless that discretion has been abused." 1 Am. Jur. 2d, Actions § 97. We cannot say that the trial court abused its discretion when the parties in the two foreclosure actions are not identical and particularly when priority is given to tax liens under General Statutes § 12-172.

There is no error.

In this opinion the other judges concurred.