[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition for habeas corpus relief from illegal incarceration resulting from the petitioner's alleged inability to pay a fine.
On August 29, 1989, pursuant to a plea agreement, the petitioner pleaded guilty to illegal possession of narcotics with intent to sell, in violation of Connecticut General Statutes 21a-278(a), in exchange for a sentence recommendation by the prosecuting authority of twelve years to serve with the petitioner reserving the right to argue for a lesser sentence (Petitioner's Exhibit A, pp. 10 and 11). At the plea canvass, the trial court indicated that it had informed the petitioner, through counsel, that it would probably impose a sentence of twelve years, execution suspended after eight years, probation five years, and a $20,000 fine as a result of the guilty plea (Petitioner's Exhibit A, p. 10). On October 13, 1989, the petitioner received a sentence of twelve years, execution suspended after seven years, probation five years, and a $20,000 fine (Petitioner's Exhibit B, pp. 14 and 15). The trial court ordered the petitioner committed to custody in the CT Page 1080 absence of payment of the fine (Petitioner's Exhibit B, p. 15). The petitioner has paid nothing toward satisfaction of the fine.
On March 23, 1993 the petitioner appeared before the Connecticut Board of Parole, which agency paroled the petitioner with respect to his seven year prison term, effective August 1, 1993, but the petitioner remains institutionalized as a result of detention arising from the unpaid fine (Petitioner's Exhibit C). The Department of Corrections, under Connecticut General Statutes18-50(a), has credited the petitioner at the rate of $20 per day served since August 1, 1993, toward extinguishing the fine. As of the date of the habeas hearing, December 22, 1993 the petitioner still owed $16,520.
In the first and second counts of the petition, the petitioner asserts that his incarceration as a consequence of his inability to pay the fine, violates his constitutional rights to due process and equal protection of the law, respectively. The third count of the petition was dismissed previously. The respondent counters that the petitioner's claim is premature in that he may only assert such a claim after his seven year prison term is entirely served; that the petitioner has failed to establish he is financially unable to pay the fine; and that, by entering the plea arrangement described above, the petitioner has waived any constitutional rights regarding his inability to pay the fine.
 I
Connecticut Practice Book 929 provides that "[n]o person shall be incarcerated as a result of his failure to pay a fine unless the judicial authority first inquires as to his ability to pay the fine." If a person is able to pay a fine, however, and declines to do so, Practice Book 931 provides that "[t]he judicial authority may, upon a finding that the defendant is able to pay fine and that his nonpayment is wilful, order the defendant incarcerated for nonpayment of the fine."
The timing of the inquiry required by Practice Book 929 is unclear. In State v. Johnson, 228 Conn. 59, (1993), p. 61, the supreme court stated that, "in the circumstances of the present case, . . . in which the sentence imposed upon a criminal defendant includes a term of imprisonment as well as a fine, 929 provides no specific guidance concerning the time when a judicial inquiry into indigency should be conducted." In State v. Zakrzewski, 26 Conn. App. 716
(1992), the court held that the inquiry into the CT Page 1081 defendant's indigency should be made near the expiration of the incarceration portion of his sentence. "If the defendant is unable to pay the fine at the expiration of his sentence he will have remedies available. The defendant may request a hearing pursuant to Practice Book 929 at a time before he is actually incarcerated for failure to pay the fine. . . . Alternatively, he could bring a habeas petition." Ibid. (emphasis added).
Thus, contrary to the respondent's position, State v. Zakrzewski, supra, specifically contemplated and sanctioned the invocation of judicial relief before an inmate actually serves time for failure to pay a fine. In the instant case, according to the Department of Corrections, the petitioner has been accruing credit toward the fine since August 1, 1993, the effective date of his parole. As noted above, the petitioner has been granted parole with respect to the prison sentence portion of his punishment. A judicial decision regarding indigency will probably dictate whether the petitioner will serve the remainder of his seven year term as a parolee in the community or while institutionalized in a correctional facility until he earns enough credit to discharge the fine. The petitioner's financial circumstance is unlikely to improve while he continues to be confined, so that a decision at this time regarding his ability to pay the fine is likely to reflect his situation at the expiration of the prison term. These factors make a judicial determination on this issue particularly salient at this time, and the issue of indigency is ripe for adjudication by a habeas court.
 II
The court finds, after a careful consideration of all the evidence adduced at the habeas hearing, that the petitioner's failure to pay the fine results from his financial inability to do so rather than from a wilful disregard of his duty to pay. The court finds credible the petitioner's evidence as to his meager prison income and his lack of assets from which to satisfy the fine. When first incarcerated, the petitioner attempted to run a restaurant operation from prison without success. The business went bankrupt. As a result of his conviction and incarceration, the petitioner lost his job at a Waterbury shelter. This case appears to the court to be one where the petitioner genuinely lacks the economic wherewithal to meet the fine, and not one where the petitioner has squandered resources, otherwise available to pay the fine, for other purposes. The petitioner's failure to pay the fine up to this point, even though payment would have resulted in his CT Page 1082 immediate release into the community on parole as early as some six months ago, strongly indicates to the court that the petitioner is truly unable to garner the funds necessary to pay the fine.
 III
Having found that the inquiry into the petitioner's ability to pay was timely and that the nonpayment was not wilful, the court turns to the final, and more difficult, issue of whether the petitioner has waived his constitutional rights to due process and equal protection by engaging in a plea agreement which included a judicially indicated fine and a commitment for failure to pay that fine. The court's research finds this issue to be one of first impression in Connecticut.
An examination of extraterritorial cases produces sparse results. There is a federal case, however, which directly addressed the matter. In Barnett v. Hopper, 548 F.2d 550 (5th Cir. 1977), vacated as moot, 439 U.S. 1041 (1978), the federal Court of Appeals held that incarceration resulting from the failure to pay a $2000 fine, which fine was imposed as part of a plea agreement, constitutes a denial of equal protection. This was true despite the fact that the petitioner in Barnett v. Hopper, supra, received exactly the penalty for which he had bargained. That court held that the petitioner had not waived his right to challenge the imprisonment which flowed from his ability to pay the fine, Ibid., p. 552.
That case expressly avoided ruling on the propriety of incarceration for someone who affirmatively agreed to be imprisoned in lieu of payment, Ibid., p. 552. The petitioner in the present case concedes, in his post trial brief, that an individual can waive this right but contends that the record must disclose such a waiver.
Usually, important constitutional rights, in the context of a criminal proceeding, may be waived only if a knowing and voluntary relinquishment of that right can be demonstrated by reference to the record, State v. Patterson, 21 Conn. App. 278 (1993), p. 294. The transcripts of the petitioner's plea canvass and sentencing hearing are devoid of any mention that failure to pay the fine would extend the length of the petitioner's imprisonment. Nor does the record disclose that the petitioner was so advised of this possibility by his counsel. There was no discussion by the trial court with the petitioner that an indigent person cannot be CT Page 1083 incarcerated solely because he is unable to pay a fine nor that the petitioner was willing to give up that right in order to participate in the plea agreement. Also, his counsel made no reference, on the record to off the record discussions with the petitioner regarding this waiver.
Based on the failure of the record to establish that the petitioner knowingly and voluntarily relinquished his constitutional right to challenge incarceration because of indigency, the court cannot find that he waived this right because the $20,000 fine was imposed as part of a plea agreement, Barnett v. Hopper, supra. Therefore, the court concludes that the petitioner has proven, by a preponderance of the evidence, that his confinement for failure to pay the fine is illegal.
There remains the question of appropriate remedy. A habeas court has "considerable discretion to frame a remedy, so long as that remedy is commensurate with the scope of the constitutional violations which has been established," Gaines v. Manson, 194 Conn. 510
(1984), p. 528. Under the provisions of Connecticut General Statutes 54-74, any judge of the superior court may remit any fine in the furtherance of the ends of justice. This remedy appears best suited to rectify the present situation.
Therefore, the court grants the petition requesting habeas corpus relief and remits the fine imposed on October 13, 1989, in case no. CR4-165930.
Sferrazza, J.