[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO QUASH CAPIAS (DOCKET ENTRY NO. 109)
Before the court is the plaintiffs' motion to quash a capias issued for the arrest of Daniel Letizia, president of the plaintiff corporation, Phoenix Limousine, Inc., The defendant herein is Nancy Murray, administratrix of the estate of Steven Hilchen. By way of background, according to the court record, Steven Hilchen, the defendant's decedent owned thirty shares of stock in the plaintiff corporation at the time of his death. In order to probate his estate, the administratrix required financial records of the plaintiff corporation to ascertain the value of the thirty shares as of the date of death. The plaintiff corporation provided various financial records to the estate. However, the estate stated that it could not validate the shares based on the records it received. Accordingly, it obtained an order from the probate court to obtain the testimony of Letizia as president of the plaintiff CT Page 7433 corporation. The defendant issued a subpoena summoning Letizia to appear at the Westport Probate Court on September 18, 2000, to give testimony. (Exhibit 1.) Letizia failed to appear as summoned. On October 19, 2000, the probate court, O'Grady, J., ordered Letizia to appear on October 23, 2000, and stated that his failure to appear would result in the issuance of a capias for his arrest. Letizia did not appear on October 23, 2000, and accordingly, on January 4, 2001, the probate court, O'Grady, J., issued a capias for his arrest. The plaintiffs filed a motion to quash the capias on January 12, 2001 and a supplemental brief in support of the motion on February 16, 2001. The defendant filed a response on February 26, 2001. The parties presented arguments, and testimony from Sheriff Moccia at short calendar on January 22, 2001.
The plaintiffs now seek to quash the capias until the superior court issues decisions on other motions in related matters still pending in the Superior Court.[1] The defendant argues that the motion to quash should be denied because the probate court had full authority to issue the capias.
General Statutes § 45a-129 provides "[a]ny court of probate may, on its own motion or upon written application of any person having an interest in any matter before it, summon any person to appear and give testimony under oath relating to such matter. The attendance of any person who has been served with any subpoena may be secured by a capias." The probate court, O'Grady, J., issued a subpoena and an order summoning Letizia to appear before it to give testimony, under oath, on September 18, 2000 and October 23, 2000. As a result of Letizia's failure to appear on October 23, 2000, on January 4, 2001, the court issued a capias for his arrest.
The plaintiffs assert that the capias should be quashed and/or that the court should stay all proceedings in the probate court pending resolution of various motions and related matters in the Superior Court.[2]
General Statutes § 45-186 (a) provides "[a]ny person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the Superior Court. . . ." "The filing of a probate appeal does nothing to impair the decree appealed from." Hall v. Dichello Distributors, Inc.,6 Conn. App. 530, 537, 506 A.2d 1054, cert. denied, 200 Conn. 807,512 A.2d 230 (1986). "A peculiarity of probate law is that an appeal of a probate court decree to the superior court does not invoke a stay of the decree." Phillips v. Moeller, 147 Conn. 482, 491-92, 163 A.2d 95
(1960); Evans v. Estate of Julia M. Simaitis, Superior Court, judicial district of Hartford at Hartford, Docket No. 586361 (May 6, 1999,Datter, J.T.R.) (24 Conn.L.Rptr. 528, 529). Thus "probate proceedings remain intact until such time as they are superseded by a judgment of the CT Page 7434 Superior Court, regardless of whether an appeal is taken." Goodman v.Bank of Boston Connecticut, 27 Conn. App. 333, 345, 606 A.2d 994
(1992)
In the present case, the plaintiffs only appealed the October 19, 2000 order in which the probate court summoned Letizia to appear for examination. A survey of all related matters reveals that the plaintiffs have not filed a probate appeal from the January 4, 2001 order issuing the capias.[3] The plaintiffs' failure to appeal from such order prevents the Superior Court from exercising jurisdiction over it. In any case, the plaintiffs do not have a right to stay all proceedings in probate court pending a decision on the motion to quash capias or any related matters currently pending in the Superior Court. In Phillips v.Moeller, supra, 147 Conn. 491-92, the court stated that "the remedy against duplication and interference from the simultaneous exercise of jurisdiction by courts of concurrent, though not coequal, jurisdiction, where, as here, the second action is brought in the court of greater jurisdiction, is (a) by procedure in the court in which the second action is brought, as by the granting of a plea in abatement OR by a stay by the court of its own proceedings, or, in exceptional situations, by the enjoining of the first proceedings until the second [is] determined, or (b) by procedure in the court in which the first action was brought, as by the granting of a voluntary stay of its own proceedings." "As a qeneral proposition, however, an injunction in the equity court or a stay by it of its own proceedings, rather than a voluntary stay in the Probate Court, would probably best serve the ends of justice, since the equity court would be in a better position to determine whether its proceedings would be facilitated or impeded by the completion of the probate proceedings." id., 491. "`In the absence of a statutory mandate, the granting of an application or a motion for a stay of an action or proceeding is addressed to the discretion of the trial court, and its action in granting or denying Ethel application will not be disturbed by an appellate court unless that discretion has been abused.'" Voluntownv. Rytman, 21 Conn. App. 275, 287, 573 A.2d 336, cert. denied,215 Conn. 818, 576 A.2d 548 (1990). Here the plaintiffs are not entitled to a stay of the proceedings in probate court pending a decision on the motion to quash or in related matters.
As to the issue of whether the subpoena was properly served, Practice Book § 13-26
provides that "at any time after the commencement of the action or proceeding [a party may] take the testimony of any person, including a party, by deposition upon oral examination. The attendance of witnesses may be compelled by subpoena as provided in Section 13-28." Practice Book § 13-28(b) provides that a "judge . . . may issue a subpoena, upon request, for the appearance of any witness before an officer authorized to administer oaths within this state to give CT Page 7435 testimony at a deposition subject to the provisions of sections 13-2 through 13-5, if the party seeking to take such person's deposition has complied with the provisions of Sections 13-26 and 13-27." Practice Book § 13-27(a) provides "[a] party who desires to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action. Such notice . . . shall be served upon each party or each party's attorney by personal or abode service or by registered or certified mail. The notice shall state the time and place for taking the deposition, the name and address of each person to be examined . . . If a subpoena duces tecum is to be served on the person to be examined, the designation of the materials to be produced as set forth in the subpoena shall be attached to or included in the notice." General Statutes § 52-143 (a) provides "[s]ubpoenas for witnesses shall be signed by the clerk of the court or a commissioner of the Superior Court and shall be served by an officer, indifferent person. . . . The subpoena shall be served not less than eighteen hours prior to the time designated for the person summoned to appear, unless the court orders otherwise.
In this case, the subpoena was addressed to Letizia and provided that it was being issued to obtain testimony on September 18, 2000, at the Westport Probate Court at 9 a.m. Thus, the subpoena satisfies the requirements of Practice Book § 13-27(a), that it contain the time and place of the deposition and the person who is to be examined. SeeMarine Midland Bank v. Pilgrim Mortgage, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 159982 (May 18, 1998, Hickey, J.) (22 Conn.L.Rptr. 207, 208).
Moreover, the record indicates that Marshal Moccia served the subpoena on Letizia at his usual place of abode in compliance with Practice Book § 13-27(a). "Although the [marshal's] return is prima facie evidence of the facts stated therein, it may be contradicted and facts may be introduced to show otherwise." Jenkins v. Bishop Apartments,Inc., 144 Conn. 389, 390, 132 A.2d 573 (1957); Collins v. Scholz,34 Conn. Sup. 501, 502, 373 A.2d 200 (1976). Moccia's return indicates that he attempted to make personal service on Letizia on September 15, 16, and 17, 2000 at his place of business, but was unable to do so. (Exhibit 1.) Moccia did, however, telephone Letizia and Letizia informed Moccia that he would not receive service. (Exhibit 1.) According to the return, on September 17, 2000, Moccia left a copy of the subpoena at the locked back door of Letizia's business, and at his usual place of abode. (Exhibit 1.) The return does not indicate the unit or apartment number where the subpoena was delivered. (Exhibit 1.) In Rodney v. Rodney,29 Conn. Sup. 92, 272 A.2d 315 (1970), the court held that where the address in the marshal's return did not contain the defendant's apartment number, the process was left at the apartment complex and never received CT Page 7436 by the party intended to be served, the service was defective. In contrast, the Connecticut Supreme Court has held that where process was left at the correct apartment and received by the party intended to be served, the lack of an apartment number is only a circumstantial defect and service thereof is valid. Hartford National Bank Trust Co. v.Tucker, 178 Conn. 472, 479, 423 A.2d 141 (1979), cert. denied,445 U.S. 904, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980). Moccia's testimony indicates that the subpoena was left at the apartment where Letizia resides and not in a common area. Moccia specifically testified that he put a copy of the subpoena under the door of Letizia's residence. The plaintiffs did not offer any evidence that contradicted this testimony. InPozzi v. Harney, 24 Conn. Sup. 488, 491-92, 194 A.2d 714 (1963), the court indicated that where process is pushed under the door leading to the apartment of the party to be served, service was valid. In State v.Burrows, 5 Conn. App. 556, 559, 500 A.2d 970 (1985), cert. denied,199 Conn. 806, 508 A.2d 33 (1986), the court stated that "[section 52-143] does not use the words "personal service," or the words "in-hand service . . . Service of a subpoena `upon' a person does not require physical acceptance of it, if the person is given notice of it and its contents. See 97 C.J.S., Witnesses 23." Moccia's return indicates that he informed Letizia, via telephone, of the date, time, and place of the hearing, but was unable to read the documents that Letizia was required to bring. (Exhibit 1.)
Service of the subpoena was proper, and that Moccia's failure to read the documents that Letizia was required to bring to the deposition is not a fatal defect. Accordingly, the court finds that the probate judge had statutory authority to issue the capias in question, and the plaintiff's motion to quash the aforementioned capias is, therefore, denied.
SKOLNICK, Judge.