******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ARS INVESTORS II 2012-1 HVB, LLC *v.*
CRYSTAL, LLC, ET AL.
(SC 19661)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued November 15, 2016—officially released February 28, 2017*

*James M. Nugent*, with whom, on the brief, was *James R. Winkel*, for the appellant (named defendant).

*Gerald L. Garlick*, for the appellee (substitute plaintiff).

*Opinion*

McDONALD, J. In this appeal, we consider whether a trial court may render a judgment of foreclosure on mortgaged property that consists of parcels of land within a subdivision that has not been approved by municipal zoning authorities. We conclude that our law permits a trial court to order foreclosure in such circumstances.

I

The parties stipulated to the facts relevant to this appeal, which we summarize as follows. The named defendant, Crystal, LLC, is the owner of real property located at 314 Wilson Avenue in Norwalk.[1] After acquiring ownership of the property, Crystal filed a site plan application with the city of Norwalk to consolidate numerous preexisting parcels within the property into two parcels. The city approved the site plan and Crystal filed a map reflecting the site plan on the city's land records.[2]

Approximately twelve years later, Crystal filed a subdivision map on the land records that purported to subdivide the property into three new parcels, identified as tracts I, II, and III (revised subdivision map).[3] Crystal, however, did not obtain permission from city planning and zoning authorities before filing the revised subdivision map. Two months later, Crystal obtained a mortgage loan in the amount of $6 million from a predecessor-in-interest to the substitute plaintiff, HVB-CT SUB, LLC.[4] The mortgage loan was secured by a mortgage on tracts I and III, as depicted in the revised subdivision map, and the parties executed a mortgage deed that described the mortgaged property by reference to the revised subdivision map on file.[5]

After the closing of the mortgage loan, however, the city notified Crystal that it had not approved the revised subdivision map and ordered Crystal to refile on the land records the earlier site plan map depicting the previous division of the property. Crystal refiled the earlier site plan map, although the revised subdivision map depicting tracts I, II, and III also remains filed on the city's land records.

Several years later, Crystal defaulted on the mortgage loan, and the plaintiff's predecessor-in-interest commenced this action to foreclose on the mortgage. The promissory note and mortgage deed were later assigned to the plaintiff, who was substituted as the plaintiff in the foreclosure action.

Crystal objected to the foreclosure by way of special defenses. In a pretrial memorandum, Crystal principally argued that the trial court, as a matter of law, could not foreclose a mortgage deed that mortgaged a parcel of real property in an unapproved subdivision. According to Crystal, a judgment of foreclosure would

have the effect of "validating" an illegal subdivision of property. Because, as Crystal asserted, the mortgage deed was invalid as executed, Crystal argued that the plaintiff could not foreclose on the mortgage without first asking the trial court to reform the mortgage deed, such that the boundaries of the mortgaged property conformed to the parcels in the original, approved site plan map.

The plaintiff disagreed and in its pretrial memorandum argued that the tracts of land could properly be the subject of a foreclosure judgment because they existed in fact and were adequately described in the revised subdivision map, as incorporated into the mortgage deed. According to the plaintiff, whether the tracts were part of an approved subdivision was relevant only for zoning purposes, and did not affect whether those tracts could be mortgaged and subject to foreclosure. The plaintiff also argued that, because it was clear that the parties intended to mortgage tracts I and III, and that such a mortgage is valid, it had no need to seek reformation of the mortgage deed.

After a trial to the court on stipulated facts and exhibits, the trial court rendered judgment in favor of the plaintiff and ordered a strict foreclosure of tracts I and III, as depicted in the revised subdivision map. In an articulation of the basis for its decision, the court explained that it had concluded that it could order foreclosure because the land consisting of tracts I and III existed in fact and was sufficiently described in the mortgage deed. The court further explained that "[t]he fact that the land described in the mortgage deed may not constitute a legal lot under local zoning regulations is not relevant to the plaintiff's right to foreclose. The court is unaware of any legal precedent [that] bars the holder of an otherwise valid mortgage from foreclosing on land [that] is not in compliance with local zoning regulations." Lastly, the court explained that it had rejected Crystal's argument that the plaintiff was required to seek reformation of the mortgage deed before seeking foreclosure because reformation was unnecessary under the circumstances. The trial court also noted that if Crystal had truly thought reformation was required, it could have sought that relief itself, but had chosen not to do so.

Crystal appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court. See General Statutes § 51-199 (c); Practice Book § 65-1.

II

On appeal, Crystal renews its argument that the trial court was barred from rendering a judgment of foreclosure as a matter of law because the mortgaged property consists of parcels in an unapproved subdivision. We reject this claim.

Before turning to the reasons for our conclusion, we first set forth our standard of review. An action to foreclose on a mortgage is an equitable proceeding, and the trial court enjoys broad discretion in considering whether to grant a mortgagee the remedy of foreclosure for the default of a mortgage loan. *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 256 and n.11, 708 A.2d 1378 (1998). We thus ordinarily review a trial court's decision to grant foreclosure for an abuse of discretion. *Reynolds* v. *Ramos*, 188 Conn. 316, 320, 449 A.2d 182 (1982). When, however, the claims on appeal are not targeted at the trial court's exercise of discretion, but at a subsidiary legal conclusion, our review is plenary. See, e.g., *Commissioner of Correction* v. *Coleman*, 303 Conn. 800, 810, 38 A.3d 84 (2012) ("[h]ow a court balances the equities is discretionary but if, in balancing those equities, a trial court draws conclusions of law, our review is plenary" [internal quotation marks omitted]). In the present case, Crystal's challenge to the trial court's conclusion that the court may order a foreclosure notwithstanding the unapproved subdivision of the property attacks a legal conclusion by the trial court, and thus presents a question of law. Our review of this claim is, therefore, plenary.

A

In support of its claim on appeal, Crystal relies on General Statutes § 8-25 (a), which provides in relevant part that "the filing or recording of a subdivision plan without [approval by the city] shall be void." According to Crystal, because the subdivision on which the mortgage was based was not approved by the city, § 8-25 (a) renders the subdivision void as a matter of law for all purposes. As a consequence, Crystal claims, any parcels of land created by that map cannot legally exist, and thus cannot be subject to foreclosure. To allow such a foreclosure, Crystal claims, would effectively validate an illegal subdivision of property. We disagree.

Section 8-25 does not prohibit the mortgaging of parcels in an unapproved subdivision or prevent the court from ordering a foreclosure of those parcels. Looking to the text of § 8-25 (a), we agree that by its plain language; see General Statutes § 1-2z; the statute renders an unapproved subdivision plan "void." We disagree, however, that this nullification applies beyond the context of municipal zoning purposes to also preclude the transfer of ownership in an unapproved subdivision. As a general matter, the zoning statutes and municipal zoning regulations govern the use of property, but do not prevent its transfer to a new owner. *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 368, 537 A.2d 1030 (1988) ("[t]he zoning regulations do not purport to restrict transfers of land, but only the uses to be conducted thereon"). Section 8-25 is no exception. An owner of a parcel in an unapproved subdivision might be prevented from certain uses of the property

as a result of its unapproved status, but nothing in § 8-25 otherwise prohibits or voids the sale of an unapproved parcel. To the contrary, § 8-25 expressly contemplates that lots in an unapproved subdivision might nevertheless be transferred, permitting a fine of up to $500 for each parcel sold. General Statutes § 8-25 (a) ("[a]ny person, firm or corporation making any subdivision of land without the approval of the commission shall be fined not more than five hundred dollars *for each lot sold*" [emphasis added]). Despite allowing for a fine, § 8-25 prescribes no other consequence. Because § 8-25 accepts that unapproved parcels may be transferred, and does not bar such transfers, we discern no basis in the text of § 8-25 to limit either the ability of an owner of such a parcel from mortgaging it, or the ability of a mortgagee to foreclose on an unapproved parcel.

Indeed, a different statute, commonly known as a validating act, explicitly validates any mortgage on a parcel of land in an unapproved subdivision. General Statutes § 47-36aa provides in relevant part: "(b) Insubstantial defects. Any . . . mortgage . . . made for the purpose of . . . mortgaging . . . any interest in real property in this state recorded after January 1, 1997, which instrument contains any one or more of the following defects or omissions is as valid as if it had been executed without the defect or omission . . . (4) The instrument conveys an interest in a lot or parcel of land in a subdivision that was not submitted for approval or that was submitted for approval but was not approved . . . ."

Because the legislature has expressly validated such mortgages, it would strain reason to conclude that this purported defect nevertheless prevents a mortgagee from foreclosing on its valid mortgage interest. Such a conclusion would altogether defeat the effect of this validating provision, and we do not construe statutes in a manner that will render them ineffective. See, e.g., *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 377–78, 977 A.2d 650 (2009).

Nor is it of any consequence that the mortgage deed identified the mortgaged property by reference to an unapproved subdivision map. Here again, § 47-36aa (b) expressly validates such mortgages. That section provides in relevant part that a mortgage deed remains valid even if "[t]he instrument transfers an interest in land by reference to a filed map or subdivision plan and the map or plan does not comply as to preparation, form, certification, approval or filing with any requirement of any special or general law, municipal ordinance or regulation . . . ." General Statutes § 47-36aa (b) (3). Under the express language of this section, the plaintiff's mortgage on tracts I and III remains valid despite the parties' reference to an unapproved subdivision map. Thus, although the map may be void inasmuch as it indicates that the property is part of a valid subdivision,

§ 47-36aa (b) (3) nevertheless expressly permits its use as a means to identify the location of the mortgaged property.

We therefore conclude that the trial court may render a judgment of foreclosure on a mortgage deed even though it transfers an interest in parcels in an unapproved subdivision of land.

B

In further support of its claim to the contrary, Crystal also relies on two cases from the Appellate Court, but those cases are inapposite to the present circumstances.

Crystal first relies on *Redding* v. *Elfire, LLC*, 74 Conn. App. 491, 812 A.2d 211 (2003). In that case, the town sought to foreclose a tax lien to recover unpaid property taxes on a parcel of property. Id., 492–93. The parcel was part of a subdivision, and the location of the parcel was depicted on an approved subdivision map filed on the land records. Id., 493. In its assessment and in its amended foreclosure complaint, however, the town used a description of the property from a *different, unapproved* subdivision map, which depicted a different location for the subject parcel. Id., 494. Despite this discrepancy, the town sought, and the trial court ordered, a foreclosure in accordance with the property description in the unapproved map. Id., 495.

On appeal to the Appellate Court, the defendant argued that the judgment of foreclosure must be reversed because of the discrepancy in the property's description. Id., 495–97. Specifically, the defendant argued that the unapproved map did not depict the true boundaries of the subject parcel, and thus the town could not rely on it for tax assessment purposes. Id., 496–97. The defendant asserted that, by permitting foreclosure using the description from the unapproved map, rather than the approved description, the trial court had essentially allowed the town to foreclose on the wrong property, using a map not valid for tax assessment purposes. Id.

The Appellate Court agreed with the defendant and concluded that the trial court had improperly ordered a foreclosure in light of the conflicting descriptions of the property. Id., 497. The Appellate Court explained: "[T]his court declines to affirm the foreclosure judgment because it is based on what appears to be an incorrect description of the subject property in an illegal map." Id. In a footnote, the Appellate Court further explained: "If we were to affirm the judgment, we would be validating an illegal map and permitting an incorrect description of the subject property to be placed in the land records. That likely would mislead title searchers and create title problems. Despite the plaintiff's urging, we decline to compromise the sanctity of title by clouding the marketable title of the property in that manner."

Id., 497 n.6.

In the present case, Crystal seizes upon the Appellate Court's concern for validating an illegal map to argue that the trial court's foreclosure judgment in the present case also validates an illegal subdivision map, rendering the judgment improper. Crystal further argues that affirming the foreclosure judgment based on an unapproved map would create confusion about the property's location on the land records. We disagree with both contentions.

First, contrary to Crystal's arguments, the decision in *Elfire, LLC*, does not establish that the foreclosure judgment in the present case is improper. *Elfire, LLC*, involved the foreclosure of a tax lien, and the town in that case had improperly used a map that was not valid for tax assessment purposes and contained an incorrect property description, to nevertheless determine the location of the property for assessment and, ultimately, foreclosure. Id., 493–97. The Appellate Court was thus concerned that allowing foreclosure would give recognition to a map that was otherwise not a valid basis for a tax assessment. Id., 496–97. The foreclosure action in the present case, however, is based on a mortgage deed, and the legislature has expressly validated mortgage deeds that mortgage parcels in an unapproved subdivision and that rely on unapproved subdivision maps to describe mortgaged property. General Statutes § 47-36aa (b) (3) and (4). The revised subdivision map otherwise remains invalid for city zoning purposes, and the trial court's foreclosure judgment does not alter its status for those purposes. A change in ownership alone ordinarily does not effect a change in zoning status. See *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 285, 545 A.2d 530 (1988) ("[z]oning is concerned with the use of property and not primarily with its ownership" [internal quotation marks omitted]). The plaintiff in the present case has conceded in its brief and at oral argument that foreclosure of the property will not require the city to recognize the unapproved subdivision of the property or permit the plaintiff to use the property as if it had been properly subdivided. See General Statutes § 8-25 (requiring municipal zoning approval for use of property as subdivision).

Second, unlike in *Elfire, LLC*, the trial court's foreclosure judgment will not create confusion on the land records. There is no evidence that the mortgage deed or the revised subdivision map reflects an incorrect description of the property. The parties have stipulated that the mortgage deed identifies the mortgaged property as tracts I and III on the revised subdivision map. Neither party has claimed that the property description based on the revised subdivision map is unclear, or that the mortgaged property actually consists of property other than that described as tracts I and III. Conse-

quently, the location of the property mortgaged and subject to the foreclosure judgment is clear on the land records. To the extent that the marketability or utilization of the property is affected by the invalid subdivision, that problem was created by the parties, not the trial court's judgment of foreclosure.

Crystal also cites *Voluntown* v. *Rytman*, 21 Conn. App. 275, 573 A.2d 336, cert. denied, 215 Conn. 818, 576 A.2d 548 (1990), in support of its claim, but the circumstances in that case bear no resemblance to those in the present case. In *Rytman*, a defendant in a tax foreclosure action asked the trial court to order foreclosure of only a portion of the defendant's property to satisfy a tax debt as an alternative to foreclosing on the entire property. Id., 278. The trial court declined, and instead ordered foreclosure of the entire property. Id. The trial court reasoned that it did not have sufficient information before it concerning the property to allow it to divide the property for sale, noting that it had not been provided adequate information about the property or a subdivision plan approved by the town. Id., 280–81. The Appellate Court affirmed the trial court's exercise of discretion for the reasons given by the trial court. Id.

Crystal relies on *Rytman* to argue that a court cannot order foreclosure of a parcel in a larger piece of property in the absence of an approved subdivision plan, but *Rytman* does not stand for that proposition. It holds only that a trial court may exercise its discretion to decline to order partial foreclosure when it lacks sufficient information to partition prudently the property— an otherwise unremarkable conclusion given the broad equitable discretion given to trial courts in considering the remedy in foreclosure actions. *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 256; *Reynolds* v. *Ramos*, supra, 188 Conn. 320. We therefore find this case also to be unhelpful to Crystal's claims.

C

Lastly, Crystal asserts that, as a prerequisite to foreclosure, the plaintiff was required to seek reformation of the mortgage deed. Specifically, Crystal claims that because the mortgage was invalid, the plaintiff could not obtain foreclosure without first seeking to reform the mortgage deed to coincide with the approved subdivision of the property. We disagree.

Reformation is appropriate only when the deed executed by the parties does not reflect the agreement the parties actually intended. "A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake . . . . We have held that this also applies to actions for reformation of a deed . . . the function of which is merely to

pass title to land, pursuant to the agreement of the parties. . . . Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties . . . ." (Citations omitted; internal quotation marks omitted.) *Lopinto* v. *Haines*, 185 Conn. 527, 531–32, 441 A.2d 151 (1981).

In the present case, Crystal has not provided any evidence to show that the original parties to the mortgage deed intended anything other than the agreement reflected in the mortgage deed. Moreover, as we have explained, and contrary to Crystal's assertions, the mortgage deed was valid even though it conveyed parcels in an unapproved subdivision. See General Statutes § 47-36aa (b) (3) and (4). Although the parties to the mortgage deed may have been unaware of the zoning status of the property, the record demonstrates that the parties entered into a valid agreement and that the mortgage deed reflects the parties' intended bargain, even if that bargain failed to account for the property's zoning deficiencies. We therefore reject Crystal's assertion that reformation was a necessary, or even permissible, prerequisite to foreclosure.

The judgment is affirmed and the case is remanded for further proceedings according to law, including setting new law days.

In this opinion the other justices concurred.

[1] The complaint also named Mario DeVivo, The Original Grasso Construction, Inc., Joseph M. Grasso and ARS Investors II 2012-1 HVB, LLC, as defendants, but they are not parties to this appeal.

[2] The site plan map was recorded on March 28, 1996, and is identified on the city land records as map no. 11567.

[3] The revised subdivision map was recorded on February 7, 2008, and is identified on the city land records as map no. 13077.

[4] The mortgage loan was made by Hudson Valley Bank to Crystal. Hudson Valley Bank later assigned its mortgage interest to the named plaintiff, ARS Investors II 2012-1 HVB, LLC, who in turn assigned the interest to the substitute plaintiff, HVB-CT SUB, LLC. For simplicity, we refer to HVB-CT SUB, LLC, as the plaintiff in this opinion.

[5] Crystal granted a mortgage on tract II to Mario DeVivo, who is not a party to this appeal. See footnote 1 of this opinion.